# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN DUBUC and DAWN DUBUC,

        Plaintiffs/Counter-Defendants-
        Appellants,

v

AUTO CLUB GROUP INSURANCE
COMPANY, ANDRE YANISH, ANGELA
SPEARMAN, MOLDQUEST
INTERNATIONAL, MATT KOCHE, A & R
TOTAL CONSTRUCTION, BRENT LAY, and
JOHN DRLICHA,[1]

        Defendants/Counter-Plaintiffs-
        Appellees,

and

COACH'S CATASTROPHE CLEANING &
RESTORATION SERVICES,

        Defendants/Counter-Plaintiffs,

and

KEN RHODES,

        Defendant.

UNPUBLISHED
August 6, 2015

No. 320331
Washtenaw Circuit Court
LC No. 10-001427-CK

Before: MARKEY, P.J., and OWENS and GLEICHER, JJ.

---

[1] According to the brief filed on behalf of this defendant, the correct spelling is "Drlicka." The caption has been prepared in accordance with the appellate docketing statement, but "Drlicka" will be used in the body of this opinion.

-1-

PER CURIAM.

Plaintiffs appeal as of right from the orders granting summary disposition in favor of defendants Moldquest International and its employee, Matt Koche; Auto Club Group Insurance Company (AAA) and its employees, Andre Yanish and Angela Spearman; and A & R Total Construction (A & R) and its employees, Brent Lay and John Drlicka. We affirm.

This case arises from physical damage incurred by plaintiffs' home when frozen water pipes broke and caused a substantial amount of water to flood the home over the course of several days while plaintiffs were on an extended vacation. The flooding resulted in extensive water damage on each of the four floors of the home and the formation of ice on the exterior of the home. Upon their return from vacation on January 3, 2009, plaintiff Steven DuBuc reported the damage by telephone to plaintiffs' homeowner's insurer, AAA. AAA, a participant in the Independent Mitigation and Cleaning Conservation (IMACC) program,[2] contacted IMACC, which in turn dispatched defendant Coach's Catastrophe Cleaning and Restoration Services, a water mitigation contractor, to plaintiffs' home. Coach's, through its employee and agent, Ken Rhodes, entered into a contract with plaintiffs to provide water remediation services.[3]

Coach's discovered that a number of problems existed in the home, including that the furnace system was not functioning. Coach's contacted IMACC,[4] which arranged for A & R to repair the pipes and furnaces in the home. Coach's subsequently requested A & R's assistance in demolishing drywall that Coach's determined was too wet to be dried. Mold began to grow inside the home as Coach's attempted to dry the home using a variety of methods, including dehumidifiers, fans, and a large portable furnace that blasted hot air into the home. The house was ultimately deconstructed down to the studs, with only the ceiling in the top floor of the house being retained. During the demolition, A & R discovered preexisting construction defects in the basement walls that had allowed groundwater to seep into the house for years, causing rot and decay in the walls. Another construction defect in the exterior chimney caps had allowed rainwater to enter the chimney chases, where it caused rotting of the sheathing inside the chimney chases and mold growth.

Plaintiff Dawn DuBuc contracted with defendant Moldquest International to evaluate the water damage and microbial mold growth within the living space and attic of the home. A

---

[2] IMACC has a nationwide network of independent restoration contractors who are subject to IMACC's quality standards before becoming IMACC-approved. Once a contractor is approved, the contractor receives assignments on a rotational basis. When a participating insurance provider receives a call regarding a claim, the provider contacts IMACC, which then alerts the next contractor on the list in the vicinity of the insured and dispatches the contractor to the location in need of services.

[3] The parties stipulated to dismiss Coach's and Rhodes from this appeal, and this Court entered an order of dismissal on September 11, 2014.

[4] There is a discrepancy in the record with respect to whether A & R's initial involvement in this case was initiated by IMACC.

moisture and mold assessment performed on January 15, 2009, revealed materials determined to be "at risk" everywhere within the home with the exception of the attic, as well as the existence of microbial growth within the living space and the basement. No "black" or toxic mold was detected, and air samples revealed that the indoor fungal spore counts were "generally unremarkable" with the exception of the air sample taken from the master suite. Moldquest developed detailed remediation procedures for each floor of the home and recommended post-remediation evaluation and testing.

Plaintiffs contracted with Coach's for mold remediation services. A & R performed two services for Coach's as part of the remediation plan. First, A & R removed the exterior siding from the third floor to remove moldy sheathing and replace it was new OSB sheathing. Second, A & R assisted Coach's in applying encapsulate to areas where mold had previously existed but which still had residual staining. A & R also removed rotted sheathing from the defective basement walls and replaced it with new untreated OSB sheathing as a temporary repair prior to air quality testing with the understanding that a permanent repair would be performed by whomever plaintiffs hired to rebuild the house. Post-remediation evaluation and clearance testing performed by Moldquest on March 14, 2009, showed that the house was safe to rebuild for occupancy.

In April 2009, plaintiffs retained a builder to restore and make numerous improvements to the home. Plaintiffs moved back into the home in October 2009. The builder had not yet repaired the original building defects in the basement walls and groundwater continued to leak into the basement. Additional testing performed by Moldquest on November 4, 2009, showed elevated levels of mold on surface and air samples taken from the basement and lower level, and testing on December 14, 2009, showed elevated levels in the kitchen and family room. Plaintiffs subsequently hired a contractor to repair the basement walls, and Coach's remediated the mold.

Moldquest performed additional testing on January 8, 2010, and on January 13 advised plaintiffs that the "results look good." Plaintiffs hired Arch Environmental Group in the spring of 2010 to perform additional mold inspection and testing. Arch Environmental reported mold spore concentrations ranging from less than 7 spores/$m^3$ to a maximum of 120 spores/$m^3$ inside the home,[5] and noted that the mold species identified inside the home was similar to the mold species identified outside the home, indicating that mold was being brought inside the home from the outdoors.

---

[5] The report stated that "the American Academy of Allergy, Asthma, and Immunology/National Bureau states that only individuals extremely sensitive to mold spore concentrations greater than 4,224 Spores/$m^3$, and mold spore concentrations greater than 4,224 Spores/$m^3$[,] warrant further investigation."

On December 29, 2010, plaintiffs filed a 75-page complaint raising 10 counts against 11 defendants as a result of allegedly improper or insufficient work performed on plaintiffs' home.[6] The trial court granted summary disposition in favor of each of the defendants.[7]

STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007). This Court also reviews de novo questions of contract interpretation and considerations regarding the legal effect of a contractual provision. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 611; 792 NW2d 344 (2010). Similarly, this Court reviews de novo the applicability of equitable doctrines, *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013), and issues of statutory interpretation, *Griffith v State Farm Mut Auto Ins Co*, 472 Mich App 521, 525-526; 697 NW2d 895 (2005). A trial court's denial of a motion to amend the complaint is reviewed for an abuse of discretion. *Tierney v Univ of Mich Regents*, 257 Mich App 681, 687; 669 NW2d 575 (2003).

## I. BREACH OF CONTRACT AND BAD FAITH CLAIMS AGAINST AAA

### A

Plaintiffs contend that the trial court erred by granting summary disposition of their breach of contract claim against AAA because the sole defense to the claim was the one-year period of limitations clause in the insurance policy, which AAA conceded at the hearing on the

---

[6] Count I alleged breach of express, written, oral and implied contracts/bad faith against AAA. Count II alleged negligence against Coach's, Rhodes, Moldquest, Koche, A & R, Drlicka, and Lay. Count III alleged negligence against Yanish, Spearman, and AAA. Count IV (labeled as a second Count III) alleged consumer fraud against Coach's, Rhodes, A & R, Drlicka, Lay, Moldquest, and Koche. Count V (labeled as Count IV) alleged nuisance "against all defendants," but the count contains no allegations against Lay or Spearman. Count VI (labeled as Count V) alleged breach of fiduciary duty "against all defendants," but the count did not allege that Lay or Spearman had a fiduciary relationship with plaintiff. Count VII (labeled as Count VI) alleged promissory estoppel based upon promises made to plaintiffs by AAA, A & R, and Moldquest, but plaintiffs alleged that they sustained damages as a proximate result of "the acts of AAA and its employees." Count VIII (labeled as Count VII) alleged fraud against Coach's, Rhodes, A & R, Drlicka, Lay, Moldquest, Koche, AAA, Spearman, and Yanish. Count IX (labeled as Count VIII) alleged civil conspiracy against Coach's, Rhodes, A & R, Lay, Drlicka, Moldquest, Koche, AAA, Yanish, and Spearman. Count X (labeled as a second Count VIII) alleged intentional interference with contractual or advantageous relationships against Coach's, Rhode, A & R, Koche, and Moldquest.

[7] The trial court also granted summary disposition in favor of Coach's on its counterclaim for payment for services performed and reimbursement for the cost and defense of this action.

motion did not apply. However, the record reveals that AAA presented a myriad of additional arguments in support of the motion for summary disposition.[8] This contention is without merit.

B

Plaintiffs argue that a material question of fact existed with respect to whether AAA's adjustor, Yanish, made an oral agreement to cover mold remediation costs in excess of the insurance policy's $5,000 mold remediation limit. We disagree.

Under MCR 2.116(C)(10), summary disposition is proper if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In considering a motion brought under (C)(10), this Court must view the evidence submitted by the parties in the light most favorable to the nonmoving party. *Burkhardt v Bailey,* 260 Mich App 636, 646; 680 NW2d 453 (2004). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003). "Where the burden of proof . . . on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Quinto v Cross & Peters Co,* 451 Mich 358, 362; 547 NW2d 314 (1996).

The plain language of the insurance policy states that mold remediation damages were limited to $5,000. Plaintiffs did not allege, and no evidence was offered, that AAA issued an endorsement changing the policy language. The language is unambiguous and should be enforced as written. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). Plaintiffs' assertion that an insurance company is bound by its oral agreements to extend policy limitations is based on a constrained reading of authority that is factually and legally distinguishable, and the statements on which plaintiffs rely in support of their assertion are misrepresentations taken out of context. Yanish testified that he had no discretion to waive the policy limit on mold remediation, and that the policy would not pay more than $5,000 for mold damages. Plaintiffs have failed to establish the existence of a genuine issue of fact.

C

Plaintiffs argue that the trial court erred by granting summary disposition of plaintiffs' bad faith claim for damages and interest under MCL 500.2026(1), which proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the business of insurance, other than isolated incidents, [arising from] a course of conduct indicating a persistent tendency to engage in that type of conduct[.]" This Court has previously held that there is generally no private cause of action under § 500.2026(1). *Young v Michigan Mut Ins Co*, 139 Mich App 600, 606; 362 NW2d 844 (1984). Further, the Supreme Court has stated that practices affecting a single policyholder are "isolated incidents" and do not amount to unfair trade practices.

---

[8] In this issue, plaintiffs address neither the alternative arguments raised by AAA, nor the trial court's disposition of the breach of contract claim.

Accordingly, plaintiffs' allegations with respect to violations of MCL 500.2026(1) do not state a cause of action.[9]

D

Plaintiffs raise a confusing argument with respect to the trial court's purported failure to address plaintiffs' claim that AAA waived the policy's two-year limitation for claims for additional payment on a replacement cost basis for personal or real property that is repaired, restored, or replaced. Plaintiffs concede that AAA informed them that they had two years to submit such claims, but argue that AAA led them to believe "through negotiations and ongoing payments . . . that a settlement of open items and claims would have been made." This argument is abandoned because plaintiffs have not sufficiently developed their argument and have not provided appropriate citations to relevant authority. *Silver Creek Twp v Corso*, 246 Mich App 94, 99; 631 NW2d 346 (2001).

E

Plaintiffs argue that the twelve-month limitation period in insurance contracts does not apply to plaintiffs' multiple tort claims. This issue was not raised before the trial court and, therefore, it is not preserved for appellate review. *Polkton Charter Twp v Pellegrom*, 265 Mich App 88, 95; 693 NW2d 170 (2005). Plaintiffs do not allege any error on the part of the trial court and do not present any argument. Because plaintiffs fail to explain or rationalize this argument, it is deemed abandoned. *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003). We note, however, that the trial court did not dismiss any of plaintiffs' tort claims on the ground that the claims were time-barred.

F

Plaintiffs contend that the trial court erred by granting summary disposition of the breach of contract claim without addressing plaintiffs' claim for repairs needed in order to bring the defective basement foundation into compliance with the building code. We disagree.

The insurance policy provided coverage under ¶ 12 "to comply with local building codes regulating the construction, repair or demolition of the covered Dwelling *for any peril we insure against*." Plaintiffs maintained that the work performed to waterproof and correct the defects in the original construction of the home was covered under ¶ 12 of the policy. However, undisputed documentary evidence revealed that the peril insured against – the broken water pipes

---

[9] Plaintiffs cursorily refer in their brief to their claim arising from AAA's "failure to timely pay benefits." We assume that this argument refers to MCL 500.2006, which provides for penalty interest when an insurer fails to pay benefits under the insurance policy in a timely manner. Plaintiffs alleged in their complaint that AAA 'failed to timely pay the claim within 120 days, in violation of MCLA 500.2006." Plaintiffs have offered no argument on appeal with respect to MCL 500.2006. Although AAA does not dispute that penalty interest is applicable if AAA fails to timely pay a claim, plaintiffs offered no evidence that AAA had not timely paid their claims.

– did not cause the damage to the basement walls and foundation. Thus, ¶ 12 of the policy did not provide coverage for the repairs to the basement walls that were required in order to comply with local building codes.[10]

## II. PROMISSORY ESTOPPEL

In order to invoke promissory estoppel, the party relying on it must demonstrate that (1) there was a promise, (2) the promisor reasonably should have expected the promise to cause the promisee to act in a definite and substantial manner, (3) the promisee did in fact rely on the promise by acting in accordance with its terms, and (4) and the promise must be enforced to avoid injustice. *Crown Technology Park v D & N Bank, FSB,* 242 Mich App 538, 548–549; 619 NW2d 66 (2000). "A promise is a manifestation of intention to act or refrain from acting in a specified manner, made in a way that would justify a promisee in understanding that a commitment had been made." *Schmidt v Bretzlaff,* 208 Mich App 376, 379; 528 NW2d 760 (1995). Statements of opinion, or mere predictions of future events, are not promises under the doctrine of promissory estoppel. *Ypsilanti Twp v Gen Motors Corp,* 201 Mich App 128, 134 n 2; 506 NW2d 556 (1993). A plaintiff must prove that he was actually damaged as a result of his reliance on the alleged promise of defendant. *Joerger v Gordon Food Service, Inc,* 224 Mich App 167, 173–174; 568 NW2d 365 (1997).

Plaintiff's promissory estoppel claim alleged that the various defendants made 31 promises as well as "[o]ther promises revealed through discovery." On appeal, plaintiffs assert that "the oral promises made by AAA and Moldquest . . . are enforceable under promissory estoppel." Plaintiffs recite various allegations from their complaint and rely on Dawn DuBuc's affidavit in support of the allegations. Plaintiffs also assert that Koche made promises to plaintiffs upon which they relied in deciding to move back into the house. However, plaintiffs fail to present any substantive argument to demonstrate that the trial court erred in its finding that "[e]ach promise is either not an actual, clear and definite promise, or it is a statement of opinion, a prediction of a future event, or a party's will, wish, or desire for something to happen in the future" and that plaintiffs failed to demonstrate how the alleged promises were sufficient to impose liability under Michigan law. Plaintiffs do not make any substantive or cogent legal argument. A party abandons an issue on appeal when it merely announces its position and leaves it to the Court to discover and rationalize a basis for its claim. *Prins v Michigan State Police*, 299 Mich App 634, 640; 831 NW2d 867 (2013). [11] This issue is abandoned.

---

[10] Plaintiffs have failed to develop and support any cogent argument concerning their argument that there are "material issues of fact as to verbal agreement to repair DuBucs' home under AAA IMACC program" and, therefore, they have abandoned the issue. *Silver Creek Twp,* 246 Mich App at 99.

[11] Further, several of the alleged promises contained in the complaint are not attributed to any particular defendant, and, as the trial court noted, are statements of opinion or mere predictions of future events and are not promises under the doctrine of promissory estoppel.

### III.  TORT CLAIMS AGAINST AAA

Plaintiffs contend that the trial court erred by granting summary disposition of the tort claims against AAA because an issue of material fact existed with respect to whether A & R and Moldquest[12] were agents of AAA.  We disagree.

In *Meretta v Peach*, 195 Mich App 695, 697-698; 491 NW2d 278 (1992), this Court stated:

> An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account.  1 Restatement Agency, 2d, § 15, p 82.  The test of whether an agency has been created is whether the principal has a right to control the actions of the agent.  *Little v Howard Johnson Co*, 183 Mich App 675; 455 NW2d 390 (1990).

It is within the court's province to determine, as a question of law, whether the evidence as to agency is sufficient to present a case for the jury.  1 Mich Civ Jur, Agency, § 36, citing *Renda v Internat'l Union, United Automobile, Aircraft and Agricultural Implement Workers of America*, 366 Mich 58; 114 NW2d 343 (1962).  The trial court found that plaintiffs presented no direct or inferential testimony tending to establish agency and, therefore, that a question of fact did not exist for a jury to determine.  Plaintiffs argue that A & R and Moldquest were not independent contractors, as the trial court found, but rather were agents of AAA because AAA had the right to control the actions of A & R and Moldquest.

Plaintiffs failed to present sufficient evidence to create an issue of fact with respect to whether AAA had the right to control the work of the contractors hired by plaintiffs to perform the repairs on the house.  Plaintiffs rely in part on the IMACC agreement.  No evidence was presented that Moldquest was an IMACC contractor or had any agreements with AAA.  Plaintiffs conceded in their complaint that it was Coach's that hired A & R to assist with demolition work.  And, no evidence was presented to support plaintiffs' contention that AAA controlled which contractors were dispatched to the site, nor was any evidence presented showing that AAA told contractors how to perform mold remediation, water removal, or any aspect of their job performance.  As the trial court properly found, the IMACC places insurance adjustors in control of the claim documentation and not the repair process.  Additionally, the fact that A & R sent invoices to AAA for payment is not evidence that AAA controlled the work performed by A & R.  The trial court properly determined as a matter of law that the evidence of agency was not sufficient to create an issue of fact with respect to whether an agency had been created.

---

[12] Plaintiffs' discussion of this issue does not include any arguments regarding the Moldquest defendants.

IV.  NEGLIGENCE

A

Plaintiffs argue that the trial court failed to address every duty alleged in plaintiffs' complaint when granting summary disposition of the negligence claim in favor of A & R.[13]  The traditional elements of a negligence claim are duty, breach of duty, causation, and damages.  *Pressey Enterprises, Inc v Barnett-France Ins Agency*, 271 Mich App 685, 687; 724 NW2d 503 (2006).  Plaintiffs have not presented any substantive analysis of the issue and have not explained how each of the alleged duties pertained to A & R.  A party abandons an issue on appeal when it merely announces its position and leaves it to the Court to discover and rationalize a basis for its claim.  *Prins*, 299 Mich App at 640.  Additionally, it is not this Court's duty to scour the record to rationalize plaintiffs' claim.  *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 633; 752 NW2d 479 (2008).  This issue is abandoned.

B

Plaintiffs assert that the trial court failed to address duties voluntarily assumed by A & R, Drlicka, AAA, and Yanish before granting summary disposition of plaintiffs' negligence claim.  Plaintiffs' brief cites a number of cases without any context and states number of duties allegedly voluntarily assumed by these defendants, but provides no application of the law to the facts and no substantive analysis.  This issue is abandoned.  *Prins*, 299 Mich App at 640.

C

Plaintiffs argue that the trial court wrongfully weighed the credibility of their expert witnesses in finding that no genuine issue of fact existed with respect to whether the A & R defendants failed to use reasonable care or worsened existing hazards.  This argument is misplaced.

The trial court found that plaintiffs' expert witnesses' affidavits violated MCR 2.119(B), which provides:

(1) If an affidavit is filed in support of or in opposition to a motion, it must:

(a) be made on personal knowledge;

(b) state with particularity facts admissible as evidence establishing or denying the grounds stated in the motion; and

---

[13] A review of plaintiffs' complaint reveals that plaintiffs alleged that each defendant in this case owed the same 31 legal duties to plaintiffs.

(c) show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit.

Specifically, the court found that the assertions in the affidavits were not made with personal knowledge, contained hearsay and other inadmissible evidence, and included assertions upon which the affiants were not competent to testify. Plaintiffs have not argued that the trial court's finding that the affidavit violated MCR 2.119(B) was erroneous. Rather, they assert that the trial court wrongfully weighed the credibility of the affiants. The trial court did not base its findings, however, on the credibility of the affiants. Plaintiffs have pointed to no other evidence to establish a genuine issue of material fact with respect to whether the A & R defendants failed to use ordinary care or worsened an existing hazard. This issue is without merit.

D

Plaintiffs argue that the trial court erred by granting summary disposition of the negligence claim in favor of A & R because a genuine issue of fact existed with respect to whether A & R's repair of the basement walls was a temporary repair or a permanent repair. Although plaintiffs do not explain the relevance of this argument, we assume that the premise is that A & R had a duty to make a permanent repair. None of the evidence on which plaintiffs rely, however, creates a genuine issue of material fact with respect to whether the repair was intended to be permanent. For example, Lay's acknowledgement that he did not know the location of repair records, and that he learned after the repair was made that the repair was a temporary repair, is not relevant to the status of the repair at the time the repair was made. And, the fact that Drlicka did not prepare any documents regarding the repair does not establish that the repair was intended to be permanent. To the contrary, Drlicka testified that he did not prepare a repair document because he informed plaintiffs that the temporary repair was made solely to remove wet materials so that air quality testing could be performed. Plaintiffs have failed to demonstrate the existence of a genuine issue of material fact with respect to the negligence claim against the A & R defendants.

IV. CONSUMER PROTECTION

A

Plaintiffs argue that the trial court erred by granting summary disposition of their claim against the Moldquest defendants for violations of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq*. We disagree.

First, plaintiffs merely cite to a number of representations allegedly made by Koche that they contend demonstrate that the Moldquest defendants falsely promised that the house could be safely remediated. Even assuming that such expressions of opinion and future predictions would be actionable under the MCPA, Arch Environmental's report confirmed Moldquest's finding that the house was safe for occupancy, and also showed that the mold was remediated as of April 2010. Consequently, plaintiffs have failed to demonstrate a genuine issue of material fact with respect to whether the Moldquest defendants falsely promised that the house could be safely remediated.

Second, plaintiffs argue that the Moldquest defendants violated the MCPA by convincing Dawn DuBuc to sign releases containing a damage limitation and waiver by fraudulently representing that the release was merely a work authorization.[14] Dawn signed the one-page document, entitled, "Work Authorization and Agreement," on nine separate occasions. The document provides, in paragraph 7, that:

> The liability, if any, of Moldquest and it's [sic] agents, servants, representatives and employees with regard to this Agreement for any claims, costs, damages, losses and expenses for which they are or may become legally liable, whether arising in negligence or other tort, contract, or otherwise, shall not exceed the amount paid by the Client for the Services. In no event shall Moldquest or its agents, servants, representatives or employees be liable for indirect, special, or consequential damages.

Absent fraud or mutual mistake, a party who signs a contract cannot seek to invalidate it on the ground that she failed to read it or thought that its terms were different. *Paterek v 6600 Ltd*, 186 Mich App 445, 450; 465 NW2d 342 (1990). Here, contrary to plaintiffs' suggestion, the entire form, including paragraph 7 and with the exception of the heading, is typed in the same size font. The heading clearly states that the document is also an "agreement." Although plaintiffs assert that Koche did not give the release to Dawn to read, nothing in plaintiffs' argument suggests that Koche prevented Dawn from reading the document on nine separate occasions. Plaintiffs have failed to demonstrate fraud.

B

Plaintiffs argue that the trial court erred by dismissing their MCPA claim against A & R on the ground that A & R, as a licensed residential maintenance and alteration contractor under MCL 339.2401(b) of the Michigan Occupational Code (MOC), MCL 339.101 *et seq.*, is exempt from the MCPA.

Under the MCPA, "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful . . . ." MCL 445.903(1). The Legislature included an exemption, however, in MCL 445.904(1)(a) that exempts any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Plaintiffs contend that mold remediation, water restoration, and water mitigation are not transactions specifically authorized by A & R's license. However, in *Liss v Lewiston-Richards, Inc*, 478 Mich 203, 212; 732 NW2d 514 (2007), our Supreme Court held that the relevant inquiry "is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." Here, the general transaction that A & R engaged in, pursuant to its contract with Coach's, involved the repair and limited demolition of a residential structure, which is

---

[14] The trial court held that the release did not bar plaintiffs' claims for fraud or intentional torts, nor did it bar Steven DuBuc's claims as he did not sign the release.

specifically authorized by the MOC. The trial court properly granted summary disposition because A & R was exempt from the MCPA.

## V.  NUISANCE

### A

Plaintiffs argue that the trial court erred by dismissing their nuisance claim against AAA, Moldquest, A & R, Yanish, Drlicka, and Koche because plaintiffs properly pled a cause of action for nuisance. However, the trial court did not grant summary disposition under MCR 2.116(C)(8) for failure to state a claim but, rather, granted summary disposition in favor of each defendant under MCR 2.116(C)(10) because of the lack of a material issue of fact. Plaintiffs have presented no argument in support of a finding that summary disposition under MCR 2.116(C)(10) was improperly granted. This issue is without merit.

### B

Plaintiffs also argue that summary disposition of the nuisance claim was improper because there were material issues of fact with respect to whether A & R had possession of the property during the repair process. Plaintiffs have merely announced a position and cited a few statements from their own affidavits. They have failed to provide authority or to develop and support any cogent argument concerning this claim and, therefore, they have abandoned it. *Silver Creek*, 246 Mich App at 99.

### C

Plaintiffs argue that A & R's failure to comply with local ordinances by failing to obtain building permits, and by making repairs that violated the building code,[15] constituted a nuisance. Plaintiffs did not cite in their complaint the specific ordinance that A & R allegedly violated. On appeal, plaintiffs merely make an assertion and cite to an attached exhibit to their brief without providing any explanation of the content of the exhibit and without providing any substantive analysis. This argument is abandoned. *Prins*, 299 Mich App at 640.

### D

Plaintiffs argue that material issues of fact existed with respect to whether the A & R defendants violated their common law duty to protect third parties against injury from nuisance by causing mold to grow in plaintiff's house. However, plaintiffs presented no admissible evidence that the A & R defendants caused the mold. Further, plaintiffs have failed to present any cogent and substantive analysis in support of their argument and, therefore, this issue is abandoned. *Prins*, 299 Mich App at 640.

---

[15] We note that plaintiffs did not allege that they were unable to obtain an occupancy permit for the home.

## VI.  BREACH OF FIDUCIARY DUTY

Plaintiffs argue that the trial court erred by granting summary disposition of their claim of breach of fiduciary duty in favor of the A & R defendants and the Moldquest defendants.  We disagree.

A fiduciary duty arises when the relationship between two parties is "of such character that each must repose trust and confidence in the other and must exercise a corresponding degree of fairness and good faith."  *Portage Aluminum Co v Kentwood Nat'l Bank,* 106 Mich App 290, 294; 307 NW2d 761 (1981); see also *The Meyer & Anna Prentis Foundation, Inc v Barbara Ann Karmanos Cancer Institute,* 266 Mich App 39, 43; 698 NW2d 900, 474 Mich 871 (2005).  When a fiduciary relationship exists, the fiduciary has a duty to act for the benefit of the principal regarding matters within the scope of the relationship.  *Id.*  Examples of fiduciary relationships are attorneys to clients, doctors to patients, trustees to beneficiaries, and guardians to wards.  *Portage,* 106 Mich App at 294.  Plaintiffs have identified no Michigan law indicating that a residential maintenance and alteration contractor owes a fiduciary duty to a client.  The trial court properly granted summary disposition of the breach of fiduciary duty claim in favor of the A & R defendants and the Moldquest defendants.

## VII.  CONSPIRACY

Plaintiffs argue that genuine issues of fact existed with respect to whether each of the defendants engaged in a civil conspiracy by conspiring with AAA to conceal code defects, hazardous conditions, and shoddy workmanship and convincing plaintiffs to rebuild the home instead of demolishing it.  This issue is abandoned because plaintiffs did not include the issue in the statement of questions presented.  MCR 7.212(C)(5); *Lash v Traverse City*, 479 Mich 180, 201 n 6; 735 NW2d 628 (2007).  Nonetheless, because we have previously concluded that the trial court properly dismissed plaintiffs' tort claims underlying the conspiracy claim, the conspiracy claim fails as well because there must be a separate, actionable tort underlying the conspiracy; a civil conspiracy claim is not actionable by itself.  *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003).  Even assuming that plaintiffs had been able to establish a genuine issue of material fact regarding the underlying tort claims, plaintiffs still did not raise a genuine issue of material fact regarding their conspiracy claim.  They presented no evidence of a concerted action of a combination of two or more persons to accompany any criminal act or some other act by criminal means.  *Admiral Ins Co v Columbia Cas Ins Co*, 194 Mich App 300, 313; 486 NW2d 351 (1992).

## VIII.  AMENDING THE COMPLAINT

Plaintiffs contend that the trial court abused its discretion by denying their motion to amend the complaint to add a third-party beneficiary claim.  They argue that they are third-party beneficiaries of the contracts between IMACC and Coach's and between IMACC and AAA, and that they had only recently obtained the documents from IMACC that served as the basis for a third-party beneficiary claim.

A trial court should freely grant leave to amend a pleading "when justice so requires."  MCR 2.118(A)(2).  "Leave to amend should be denied only for particularized reasons, such as

-13-

undue delay, bad faith, or dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or where amendment would be futile." *Jenks v Brown,* 219 Mich App 415, 420; 557 NW2d 114 (1996).

Plaintiffs' proposed amended complaint asserted 11 causes of action, including breach of contract as a third party beneficiary. The trial court denied the motion to amend for reasons of undue delay, undue prejudice, and futility, emphasizing that "this could have been brought up a long time ago" and that the proposed amendment would be "futile" in any event.

A review of plaintiffs' arguments below with respect to the various defendants' motions for summary disposition belies plaintiffs' argument on appeal that they were unaware of the contents of the IMACC documents. Plaintiffs relied on the provisions of the IMACC documents and the alleged violations of the terms of the documents with respect to several of the issues raised below. Additionally, plaintiffs filed this lawsuit on December 29, 2010, and filed a separate lawsuit against IMACC on January 5, 2012. The motions for summary disposition of several defendants had already been fully briefed, argued, and decided before plaintiffs filed their August 16, 2012 motion for leave to file an amended complaint. Further, plaintiffs fail to cite any authority to support their assertion that plaintiffs were the intended third party beneficiaries of the agreements between IMACC and AAA, and IMACC and Coach's.[16] Under these circumstances, the trial court did not abuse its discretion by denying the motion to amend the complaint.

Affirmed. Defendants, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Elizabeth L. Gleicher

---

[16] Although plaintiffs repeatedly refer to A & R as an IMACC contractor, no evidence was produced to support a finding that A & R was dispatched to the home by IMACC to perform any of the allegedly defective services performed by A & R. At most, the evidence suggests that A & R might have been dispatched to the home solely to perform plumbing and furnace repairs, neither of which are the subject of the allegations of negligently performed services.