KNIGHT v NORTHPOINTE BANK

Docket No. 310206. Submitted January 15, 2013, at Lansing. Decided January 24, 2013. Approved for publication March 26, 2013, at 9:00 a.m. Leave to appeal denied, 494 Mich ___.

Cheryl Knight brought an action in the Kalkaska Circuit Court against Northpointe Bank and NPB Mortgage, LLC, seeking to quiet title to real property and a determination that plaintiff owns the property free of any claim by defendants, the purchasers of the property at a sheriff's sale following foreclosure of a mortgage on the property. Defendants sought summary disposition on the bases that plaintiff's complaint was untimely under the applicable statute of limitations and under the equitable doctrine of laches. The court, Janet M. Allen, J., dismissed the claim as untimely under the doctrine of laches. Plaintiff appealed.

The Court of Appeals *held*:

Although considerations of timing are important when determining whether laches applies to the facts, application of laches is not triggered by the passage of time alone. It is the prejudice occasioned by the delay that justifies the application of laches. Given the record evidence that plaintiff delayed suing for years after the point at which she knew or should have known of her claim and that the defendants' ability to defend against the suit was severely prejudiced by the delay, it cannot be concluded that the trial court erred when it dismissed plaintiff's claim on the basis of laches. Under the circumstances of this case, the fact that the defendants knew, or at least should have known, that plaintiff's sister had transferred the property from their mother to herself using a power of attorney from her mother did not preclude defendants from asserting laches as a defense. Laches can apply even though, as in this case, the applicable period of limitations has not expired. Plaintiff did not have a vested right to the property that would render laches inapplicable.

Affirmed.

1. EQUITY — LACHES.

A court sitting in equity may withold relief when a plaintiff has not exercised reasonable diligence in vindicating his or her rights on the

ground that the plaintiff is chargeable with laches; although considerations of timing are important when determining whether laches applies to the facts, laches is not triggered by the passage of time alone; mere delay in attempting to enforce a right does not constitute laches because, to constitute laches, it must further appear that the delay resulted in prejudice to the party claiming laches of such character so as to render it inequitable to enforce the right.

2. EQUITY — LACHES.

Laches is an equitable tool used to provide a remedy for the inconvenience resulting from a plaintiff's delay in asserting a legal right that was practicable to assert.

3. AGENCY — TRANSFERS OF PRINCIPAL'S PROPERTY TO AGENT.

An agent generally cannot use his or her agency to transfer the principal's property to the agent; where an agent's transfer is not inconsistent with the agent's duty to the principal, the agent may make such a transfer.

4. EQUITY — LACHES — LIMITATION OF ACTIONS — REAL PROPERTY — VESTED RIGHTS.

Laches can apply even though the period of limitations applicable to an action has not expired; laches may be inapplicable to a plaintiff having vested rights to real property at issue in an action because the plaintiff has no obligation to assert his or her rights to the property as against some third party since the world is on notice of the plaintiff's good title.

*Robert Kaufman* for plaintiff.

*The Gallagher Law Firm, PLC* (by *Peter C. Brown*), for defendants.

Before: SAWYER, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM. In this real property dispute, plaintiff, Cheryl Knight, appeals as of right the trial court's order dismissing her complaint for title to the disputed property free of any claim by defendants, Northpointe Bank and NPB Mortgage, LLC (collectively the Bank). On appeal, we must determine whether the trial court erred when it determined that Knight's claim was

untimely under the equitable doctrine of laches. Because we conclude that the trial court did not err when it applied laches to bar Knight's claim, we affirm.

## I. BASIC FACTS

Knight's mother, Laurene Marian Coe, was a partner in Laurendal Enterprises, which owned 240 acres of real property in Kalkaska County, Michigan. In November 1997, Coe and another partner caused the partnership to transfer ownership of the property to Coe in her individual capacity through a warranty deed. Coe was a widow at the time and living in Florida.

Knight's sister, Charlene Diane Cutro, lived in Ann Arbor, Michigan. At some point before June 2001, Coe executed a power of attorney that gave Cutro the authority to transfer Coe's real property in Michigan.

In June 2001, Cutro executed a warranty deed on Coe's behalf that transferred 200 acres of the original property to Cutro. At the same time, Cutro used her power of attorney to grant herself an easement over that portion of a trail that crossed through the remaining 40 acres. The easement described a right of way "following the existing trail" that was 15-feet wide; the easement was for ingress and egress only.

In February 2002, Coe executed a warranty deed transferring the remaining 40 acres to Knight along with an easement for ingress and egress. The 40-acre parcel included a house, pole barn, and shed. The easement covered a 15-foot right of way that followed an existing trail that wound over parts of both the 40-acre parcel and the 200-acre parcel. Coe executed the warranty deed and easement in Florida.

In June 2003, Coe executed two new warranty deeds—both on the same day—covering the same 240 acres that

she had already conveyed to her daughters, Cutro and Knight. In the deeds, Coe again transferred 200 acres to Cutro and 40 acres to Knight, but she also provided for an easement that differed from that contained in the original transfers: it was now 66 feet wide, 33 feet on either side of a line described in the deed, rather than 15 feet wide, and the easement was for ingress, egress, and utilities.[1]

In March 2005, Cutro borrowed $180,000 from the Bank. To secure the repayment of the debt, Cutro granted the Bank a mortgage on the 200 acres that she obtained from her mother. In October of the same year, Cutro transferred the 200-acre parcel to her trust.

Cutro died in October 2006 and Coe died in February 2007.

In August 2007, Cutro's daughter, Edith Enders, acting as the successor trustee of her mother's trust, transferred the 200-acre parcel to herself. Thereafter, Enders made payments on the Bank's note, but she fell into arrears.

The Bank foreclosed on the 200-acre parcel and purchased it at a sheriff's sale in September 2010 for more than $193,000. The redemption period for the 200-acre parcel expired in October 2011 and the Bank began to seek a purchaser for the property.

In November 2011, Knight sued the Bank. In her complaint, Knight alleged that her sister, Cutro, was "disabled as a matter of law" from making the "self-dealing conveyance" of the 200-acre parcel to herself as the attorney-in-fact for her mother. Moreover, because the "defect" in Cutro's title was "plain on the face of the

---

[1] The legal description for the 40-acre parcel used in the 2003 deeds varied from that used in the 2001 and 2002 deeds in some respects but still covered the area with the house and pole barn.

public record," the Bank could not claim to be a bona fide purchaser from Cutro. On the basis of these allegations, Knight asked the trial court to "decree" that she was the rightful owner of the property and that she owned it free of any claims by the Bank.

In March 2012, the Bank moved for summary disposition under MCR 2.116(C)(7). The Bank argued that Knight's complaint was untimely under the applicable statute of limitations and under the equitable doctrine of laches. The trial court disagreed with the Bank's contention that the applicable period of limitations had expired,[2] but agreed that Knight's decision to wait so long to sue prejudiced the Bank. Accordingly, in an opinion and order signed in April 2012, the trial court dismissed Knight's claim as untimely under the doctrine of laches.

This appeal followed.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Knight argues on appeal that the trial court erred when it dismissed her claim under the equitable doctrine of laches. This Court reviews de novo a trial court's decision to grant summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo a trial court's decision to apply equitable doctrines such as laches. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005).

---

[2] The trial court held that the applicable period was the 15-year period provided under MCL 600.5801(4). The bank has not cross-appealed that determination. Accordingly, the application of MCL 600.5801(4) to this case is not at issue on appeal.

B. LACHES

With her complaint, Knight challenged whether Cutro validly transferred the 200 acres owned by their mother to herself. She also asked the trial court to determine, on that basis, that she owned the 200 acres free of any claim by the Bank. Thus, although she did not refer to her claim as one to quiet title, it is evident that Knight invoked the trial court's equitable power to quiet title. *Beach v Lima Twp*, 489 Mich 99, 106; 802 NW2d 1 (2011).

As our Supreme Court has explained, a complainant in equity must come to the court with a clean conscience, in good faith, and after acting with reasonable diligence: " 'Nothing can call forth this court into activity but conscience, good faith and reasonable diligence; where these are wanting the court is passive, and does nothing.' " *Henderson v Connolly's Estate*, 294 Mich 1, 19; 292 NW 543 (1940), quoting *Campau v Chene*, 1 Mich 400, 405 (1850). If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches. *Lothian v Detroit*, 414 Mich 160, 168; 324 NW2d 9 (1982). "[W]hen laches appears, the court merely leaves the parties where it finds them." *Duck v McQueen*, 263 Mich 325, 328; 248 NW 637 (1933). This is so because equity will not lend aid to those who are not diligent in protecting their own rights. *Mogk v Stroecker*, 243 Mich 668, 672; 220 NW 730 (1928). The rule that equity aids the vigilant is designed to discourage laches by making it a bar to relief and to prevent the enforcement of stale demands. *Henderson*, 294 Mich at 19.

Although considerations of timing are important when determining whether laches applies to the facts, laches is not triggered by the passage of time alone.

*Lothian*, 414 Mich at 168. Laches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. *Dep't of Pub Health v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996). As such, "when considering whether a plaintiff is chargeable with laches, we must afford attention to prejudice occasioned by the delay." *Lothian*, 414 Mich at 168. It is the prejudice occasioned by the delay that justifies the application of laches. *Dunn v Minnema*, 323 Mich 687, 696; 36 NW2d 182 (1949) ("This Court has repeatedly held that mere delay in attempting to enforce a right does not constitute laches, but that it must further appear that the delay resulted in prejudice to the party claiming laches of such character as to render it inequitable to enforce the right.").

### C. APPLYING THE LAW

Here, Knight sued to quiet title to the 200-acre parcel at issue more than 10 years after the transfer that she claims was invalid. During that 10-year period, the property was transferred several times: Cutro transferred it to herself using the power of attorney from her mother in June 2001, Coe executed a deed transferring a similarly described 200-acre parcel to Cutro in June 2003, Cutro transferred the property to her trust in 2005, Enders transferred the property to herself after her mother's death, and the Bank foreclosed on and purchased the property at a sheriff's sale in 2010. These transfers were recorded and, therefore, a matter of public record. In addition, each transfer contained a right of first refusal that named Knight (among others) and required notice before the property could be sold. Coe also transferred the adjacent 40-acre parcel to Knight just months after Cutro transferred the 200-

acre parcel to herself using the power of attorney and Coe transferred the 240 acres involved here to Cutro and Knight along with a revised easement in 2003. Thus, Cutro and Knight were, in effect, neighbors for more than eight years before Knight's decision to sue.

Given the evidence, Knight had to have been aware that her sister, and later her niece, had possession of the 200 acres that neighbored her 40-acre parcel and that they had possession under a claim of title. She could easily have asserted her claim against either her sister, before she died, or her niece. Yet, she chose not to do so; she did not assert her rights when her sister took possession of the property, did not assert her rights when her sister mortgaged the property and transferred it to her trust, and did not assert her rights when her niece transferred the property into her own name. Moreover, Knight did not, and has not, offered any reason for her decision to delay suit until after the Bank acquired the property. Knight's apparent knowledge of the facts and circumstances surrounding these transfers suggests that she deliberately chose to sleep on her rights while her sister, and later her niece, had possession of the property at issue. See *Campau v Van Dyke*, 15 Mich 371, 378-379 (1867) (stating that the plaintiff must show that he or she is "prompt and eager for redress, and any delay must be accounted for and excused").

Moreover, Knight's decision to delay suing until after the Bank acquired the property at the sheriff's sale plainly prejudiced the Bank's ability to defend itself against Knight's lawsuit. During the 10-year delay, the two most important witnesses to the underlying facts died. Had Knight sued before her sister died, Cutro could have provided evidence that her mother actually authorized her to transfer the property to herself using

the power of attorney. Cutro may also have been able to produce a copy of the power of attorney that showed that her mother specifically authorized her to make the transfer. Coe too could easily have cleared up whether she authorized her daughter to use the power of attorney to transfer the property. By waiting to sue until after the deaths of her sister and her mother, Knight seriously prejudiced the Bank's ability to obtain evidence to support its position. Under such circumstances, Michigan courts will apply laches to bar the plaintiff's request for relief. See *German American Seminary v Kiefer*, 43 Mich 105, 111; 4 NW 636 (1880) ("[I]t would be the height of injustice to permit complainant, with full knowledge of the facts, to delay suit while the persons who were familiar with the facts were one by one passing away, and at last bring suit under circumstances which at the best must leave the court in doubt whether the remaining evidence does not disclose a partial, defective and misleading case."); *Campau*, 15 Mich at 380-381 (holding that laches barred the claims because the deceased witnesses "must have been more intimately acquainted with all the material facts than any witnesses who can now be produced" and, as a result, the court had "no satisfactory assurance that a very different state of facts might not have appeared").

Knight's delay also prejudiced the Bank's position by increasing its financial exposure. Had Knight sued before the Bank lent money to Cutro, it could have avoided the potential for losses by refusing to loan Cutro money until after Knight's claims were resolved. Similarly, had Knight sued before the Bank purchased the property at the sheriff's sale, it might have been able to mitigate its losses by seeking compensation from Cutro's estate or from Enders. Knight's decision to sleep on her rights while the Bank acquired rights to the property also strongly supports the trial court's

decision to apply laches. See *Ford v Loomis*, 33 Mich 121, 122-123 (1876) (holding that application of laches was proper where the plaintiff "stood silently by while the property was being improved, by parties claiming to own it in fee, until it has now become very valuable, and third parties have acquired rights therein"). Given the record evidence that Knight delayed suing for years after the point at which she knew or should have known of her claim and that the Bank's ability to defend against her suit was severely prejudiced by the delay, we cannot conclude that the trial court erred when it dismissed Knight's claim on the basis of laches.

Notwithstanding the evidence that the Bank was prejudiced by her delay in bringing the suit, Knight claims that the Bank could not avail itself of laches because it was plainly on notice that Cutro's title was defective. Specifically, she claims that whenever a person transfers title to himself or herself using a power of attorney, that transfer is facially invalid. Generally, an agent cannot use his or her agency to transfer the principal's property to himself or herself. See *Wilson v White*, 223 Mich 497, 503; 194 NW 593 (1923); see also *McKay v Williams*, 67 Mich 547; 35 NW 159 (1887). Nevertheless, where an agent's transfer is not inconsistent with his or her duty to the principal, the agent may make such a transfer. See *Hutton v Sherrard*, 183 Mich 356, 358-359; 150 NW 135 (1914). If Coe authorized Cutro to transfer the property to herself, then the transfer was valid and Knight would have no right to complain. For that reason, the Bank could have defended against Knight's claim by presenting evidence that Coe had actually authorized Cutro's transfer. But, as a result of Knight's unexplained delay, the Bank no longer has access to the evidence that would prove the validity of the transfer. Therefore, under the circumstances, the fact that the Bank knew, or at the least

should have known, that Cutro transferred the property from her mother to herself using a power of attorney did not preclude the Bank from asserting laches as a defense.

Knight also argues that laches does not generally apply to bar a claim that was brought within the applicable period of limitations and where the plaintiff comes to equity for the protection of a vested legal right. However, this Court has held that laches can apply "even though the period of limitations has not run." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 456; 761 NW2d 846 (2008); see also *Lothian*, 414 Mich at 175 (characterizing laches as a "cut-off measure, interposed as a defense designed to lay to rest claims which are stale as well as prejudicial to the defendant"). Accordingly, the fact that Knight sued within the applicable period of limitations does not preclude the application of laches to bar her claim. Likewise, Knight did not have a vested right to the property that would render laches inapplicable; in cases where there are vested rights, the plaintiff has no obligation to assert his or her rights as against some third party because the world is on notice of the plaintiff's good title. See *Angeloff v Smith*, 254 Mich 99, 101; 235 NW 823 (1931). Knight never had record title to the 200-acre parcel, and, to the extent that she claimed such a right after her sister's transfer, she had to assert that in a timely fashion, which she did not do.

### III. CONCLUSION

The trial court did not err when it dismissed Knight's claim against the Bank under MCR 2.116(C)(7). Knight delayed bringing her suit to quiet title to the property at issue for years. During that time, the primary witnesses to the events underlying Knight's claim died and it is

reasonable to infer that significant evidence has been lost. Given the degree that Knight's delay prejudiced the Bank's ability to defend, we cannot conclude that the trial court erred when it applied laches to bar Knight's claim. As our Supreme Court explained in a case where the primary witnesses had similarly died:

> [W]e can feel no satisfactory assurance that a very different state of facts might not have appeared, fully establishing the validity and good faith of the proceedings, had this suit been brought, and the testimony taken, while those who best knew the facts were able to speak. Nor can we grant the relief asked without just apprehension of doing injury alike to the rights of the living and the memory of the dead. [*Campau*, 15 Mich at 381.]

Under the facts of this case, it was proper for the trial court to leave the parties where it found them. *Duck*, 263 Mich at 328.[3]

Affirmed. As the prevailing parties, Northpointe Bank and NPB Mortgage, LLC may tax their costs. MCR 7.219(A).

SAWYER, P.J., and MARKEY and M. J. KELLY, JJ., concurred.

---

[3] Having concluded that the trial court did not err when it dismissed Knight's claim on the basis of laches, we decline to consider Knight's remaining argument on appeal.