# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN S. LIPPS and MARCIA LIPPS,

      Plaintiffs/Cross-Defendants-
      Appellees,

and

PHILLIP MULDER,

      Intervening Plaintiff/Cross-
      Defendant-Appellee,

and

VINCENT P. STAFFNEY,

      Intervening Plaintiff/Cross-
      Plaintiff/Third-Party Plaintiff-
      Appellant,

v

CITY OF MUSKEGON,

      Defendant/Cross-Defendant-
      Appellee,

and

BARBARA J. FRIED, MUSKEGON PUBLIC
SCHOOLS, PATRICK S. INGLOT, MARY A.
INGLOT, DONNA J. HILGEMAN, and JEFFREY
PEEL,

      Third-Party Defendants.

UNPUBLISHED
May 21, 2015

No. 320670
Muskegon Circuit Court
LC No. 12-048747-CH

Before: BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

-1-

Intervening plaintiff/cross-plaintiff/third-party plaintiff Vincent P. Staffney appeals by right the trial court order granting a directed verdict to plaintiffs/cross-defendants John and Marcia Lipps, intervening plaintiff/cross-defendant Philip Mulder, and defendant/cross-defendant the City of Muskegon ("the city"). We affirm.

Staffney, the Lipps, and Mulder all own at least one parcel of real property on Wilcox Avenue in the Lake Michigan Park Subdivision in the city. The south side of Wilcox Avenue borders Lake Michigan and the north side borders the parties' property. A steep sand dune is also located north of, and generally parallel to, Wilcox Avenue; the parties are required to park their vehicles on a vacated portion of Wilcox Avenue and climb the dune to reach their property. Staffney alleged that at one time, prior to 1975, an access drive known as Sand Drive ran northwest up the dune, intersecting parcels of property owned by several of the parties and connecting Wilcox Avenue to the top of the dune. However, when Staffney purchased his first parcel of property in the subdivision in 1979, Sand Drive was no longer in use, and stairs on Mulder's property (that reached from Wilcox Avenue to the top of the dune) and a retaining wall on Mulder's property both intersected the access way that was once Sand Drive. In 1982, the Lipps built stairs on their property that reached from Wilcox Avenue to the top of the dune; these stairs also allegedly interfered with what was once Sand Drive.

In 2012, the Lipps brought an action against the city attempting to quiet title to a vacated portion of Wilcox Avenue directly in front of their property so that they could erect a carport. Mulder and Staffney both intervened in that action as plaintiffs. In addition, Staffney brought a countercomplaint against the Lipps, Mulder, and the city alleging that Mulder's stairs and retaining wall and the Lipps' stairs encroached on the vacated portion of Wilcox Avenue and interfered with his property interest. Staffney sought an order requiring either the Lipps and Mulder, or the city, to remove both sets of stairs and the Mulders' retaining wall. Although Staffney's complaint did not specifically seek the re-opening of Sand Drive, it is undisputed that Staffney wanted Mulder's stairs and retaining wall and the Lipps' stairs removed so that he could reestablish vehicular access to the top of the dune. The underlying action brought by the Lipps resolved before trial; however, the parties proceeded to a bench trial on the claims in Staffney's countercomplaint. After the close of Staffney's proofs, the Lipps, Mulder, and the city moved for a directed verdict. The trial court found that Staffney's claims were barred by the doctrine of laches and dismissed his complaint.

When a defendant moves for a directed verdict in a bench trial, the motion is properly treated as a motion for involuntary dismissal pursuant to MCR 2.504(B)(2). *Sands Appliance Servs, Inc v Wilson,* 463 Mich 231, 235 n 2; 615 NW2d 241 (2000). Involuntary dismissal is proper "where the trial court, when sitting as the finder of fact, is satisfied at the close of the plaintiff's evidence that 'on the facts and the law the plaintiff has shown no right to relief.' " *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). "Laches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert." *Knight v Northpointe Bank*, 300 Mich App 109, 115; 832 NW2d 439 (2013). If a plaintiff does not act with "good faith and reasonable diligence" in pursuing a claim, and the defendant is prejudiced by the plaintiff's delay in bringing the claim, laches will bar the claim. *Id.* at 114-115.

The undisputed facts at the bench trial supported a finding that Staffney did not act in good faith or with reasonable diligence in bringing his claims seeking the removal of the Lipps' stairs and Mulder's stairs and retaining wall. At the time Staffney purchased his first parcel of property in the subdivision in 1979, he was aware of the existence of the former Sand Drive, but Mulder's stairs and retaining wall were already in place and blocking this access drive. Then, three years after Staffney purchased his first parcel of property in the subdivision, the Lipps' stairs were installed. In other words, Staffney waited over 33 years after he was aware of Mulder's stairs and retaining wall, and over 30 years after he was aware of the Lipps' stairs, before initiating the instant action.

The record also supports that during the passage of most of this time, Staffney possessed the requisite knowledge of the law and facts to enable him to file his action. Staffney first raised the argument that Mulder's stairs and retaining wall should be removed in 1984, when Staffney and another landowner, Max Benham, attempted to fill in Mulder's retaining wall and remove Mulder's stairs to gain vehicular access to the top of the dune. However, the city stopped Staffney and Benham's self-help efforts. At that point in 1984, Staffney was clearly aware that Mulder's stairs and retaining wall interfered with re-opening Sand Drive and that neither Mulder nor the city would enforce the removal of these structures. This knowledge was affirmed in the 1980s when Benham was engaged in litigation with the city regarding vehicular access to the top of the dune, but the issue was not resolved. In addition, Staffney testified that in 1992 the city ignored his requests to re-open Sand Drive. In 2002, Staffney wrote to Mulder requesting permission to move Mulder's retaining wall to allow Staffney vehicular access to his property, but Mulder did not respond. In this letter, Staffney acknowledged that the dispute over access to Sand Drive had been ongoing "for years." In 2003, third-party defendant Barbara J. Fried initiated litigation against the Lipps and Mulder in an attempt to obtain vehicular access to her lots, but was not successful. Then, in 2004, Mulder received a building permit to replace his stairs; although Staffney challenged this permit at the local administrative level, he did not file a lawsuit in an attempt to have Mulder enjoined from replacing the stairs or the city enjoined from issuing the permit. Similarly, in 2006, the Lipps received a building permit to replace their stairs; again, Staffney did not file a lawsuit in an attempt to have the Lipps enjoined from replacing the stairs or the city enjoined from issuing the permit. On these undisputed facts, Staffney failed to exercise good faith and reasonable diligence in raising his current claims with regard to Mulder's stairs and retaining wall, the Lipps' stairs, and the city's action or inaction with regard to the stairs and retaining wall.

The facts at the bench trial further supported a finding that Staffney's delay in bringing his complaint prejudiced the Lipps, Mulder, and the city. As noted, in the early to mid-1980s, the city engaged in litigation with Benham regarding the removal of Mulder's stairs and retaining wall to facilitate vehicular access to the top of the sand dune. In 2003, Fried brought a lawsuit against Mulder and the Lipps in an attempt to obtain vehicular access to the property at the top of the sand dune. Therefore, Staffney's delay in bringing his claim resulted in the city, the Lipps, and Mulder having to litigate nearly identical issues twice. In addition to spending time and money on duplicative litigation, the city presumably relied on holdings from the previous litigation when it issued permits to the Lipps and Mulder to rebuild their stairs. And, in addition to spending time and money on duplicative litigation, the Lipps and Mulder presumably relied on holdings from the previous litigation to expend additional time and money to rebuild their stairs.

In sum, the trial court correctly found that based on the undisputed facts, Staffney did not act in good faith or with reasonable diligence in bringing his claims and that his delay in bringing the claims prejudiced the Lipps, Mulder, and the city. Accordingly, the trial court properly found that both of the claims in Staffney's countercomplaint were barred by the doctrine of laches. *Knight*, 300 Mich App at 120. Because Staffney's claims were barred by laches, the trial court properly dismissed the action. *Begola Servs,* 210 Mich App at 639.

    Affirmed.[1]


                                        /s/ Jane M. Beckering
                                        /s/ Jane E. Markey
                                        /s/ Douglas B. Shapiro

---

[1] Because the facts support a finding that judgment was appropriate for the Lipps, Mulder, and the city, we decline to address Staffney's argument that judgment is appropriate for him pursuant to MCR 7.216(A).