# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF MARTHA NATSIS.

CHRIST G. NATSIS, Personal Representative of
the ESTATE OF MARTHA NATSIS,

UNPUBLISHED
September 18, 2018

Appellant,

v

No. 338442
Wayne Probate Court
LC No. 1976-677148-DA

BESSIE NATSIS DAVENPORT,

Appellee.

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Petitioner-appellant Christ G. Natsis, the personal representative of the Estate of Martha Natsis, appeals by right the probate court's opinion and order denying petitioner's motion for summary disposition pursuant to MCR 2.116(C)(7) and (10), and instead granting summary disposition in favor of respondent-appellee Bessie Natsis Davenport pursuant to MCR 2.116(I)(2). The parties are two of Martha's three children. We affirm.

## I. FACTUAL BACKGROUND

At issue in this appeal is the estate's interest in an apartment building located in Ann Arbor, Michigan (the "Ann Arbor property"[1]). Petitioner's family's interest in this property dates back to 1956 when Robert and Anna Netzel, by warranty deed, first conveyed the property to several members of the Natsis family. On April 11, 1960, the Ann Arbor property was conveyed by quitclaim deed to petitioner and his wife, to petitioner's now-deceased brother John and his wife, and to petitioner's parents, George and Martha Natsis. Each couple had a resulting 1/3 undivided interest in the property. The deed was recorded with the Washtenaw County register of deeds in April of 1962. George died in 1972, and Martha died testate in 1976. Martha's will provided that her sons, petitioner and John, would each receive $5,000 from the

---

[1] The probate court also referred to this property as "the Washtenaw property."

estate, with the residue of the estate passing equally to her three children: petitioner, John, and Bessie. Martha's will did not make any specific provisions for the Ann Arbor property.

After Martha's death in 1976, petitioner was appointed personal representative of her estate. Martha's interest in the Ann Arbor property was not listed as an estate asset in the estate inventory, nor was it identified in the account of fiduciary. The probate court administratively closed the estate in 2002. Petitioner allegedly did not believe that the estate continued to have an interest in the Ann Arbor property.

Petitioner asserts that after Martha died, the three siblings engaged in protracted negotiations to settle Martha's estate and the parties' interests in the Ann Arbor property. Sometime in 1983, after rejecting several proposed iterations, the siblings finally entered into a written agreement to resolve the dispute. The "1983 Agreement" included the following provisions:

> 1. That JOHN G. NATSIS AND CHRIST G. NATSIS agree to give to BESSIE NATSIS DAVENPORT the total sum of SIXTY-FIVE THOUSAND DOLLARS ($65,000.00) to settle the estate of MARTHA NATSIS and resolve any and all differences regarding the real estate commonly known as 905 Church Street, Ann Arbor, Washtenaw County, Michigan, and more fully described as:
>
> > S 10 ft. of Lot 3 and N 46 ft. of Lot 4, Hills Addition to City of Ann Arbor, Washtenaw County, Michigan, according to the Plat thereof as recorded in Liber 60 of Deeds, Page 136, Washtenaw County Records.
>
> 2. For the above consideration BESSIE NATSIS DAVENPORT agrees to settle the above mentioned estate, agrees to the first and final account, agrees to sign a waiver and consent, and upon payment of the above consideration agrees to sign a receipt for residue. Further, BESSIE NATSIS DAVENPORT further agrees to waive any and all claims that she may have had regarding the real estate as above mentioned.
>
> 3. BESSIE NATSIS DAVENPORT hereby tenders to JOHN G. NATSIS and CHRIST G. NATSIS a quit claim deed which was found in her papers wherein the real estate was conveyed to JOHN G. NATSIS and CHRIST G. NATSIS.
>
> 4. JOHN G. NATSIS AND CHRIST G. NATSIS agree to pay BESSIE NATSIS DAVENPORT the above mentioned consideration in full and complete settlement of said estate, and any claim that she may have had regarding the real estate as mentioned above.
>
> 5. The parties hereto acknowledge that upon fulfillment of this agreement, each party releases the other party from any and all liabilities which they may have had against each other regarding the estate and the real estate above mentioned.

Petitioner contends that Paragraph 3 refers to a quitclaim deed that Martha allegedly executed before her death, in which she purportedly conveyed her 1/3 interest in the Ann Arbor property to petitioner and John. Petitioner contends that this deed somehow was in Bessie's possession. Because this alleged deed has never been produced, petitioner refers to it as "the missing deed." Bessie denies that any such deed ever existed.

It is undisputed that petitioner and John paid Bessie $40,000 in October 1983. Petitioner provided the probate court with a copy of a cashier's check, dated October 7, 1983, and made payable to petitioner in the amount of $40,000. Petitioner endorsed the check over to Bessie with the following notation included with his signature:

> Pay only to the order of Bessie Davenport -- per amended agreement --
> Balance Due is $25,000.00 payable in 60 Days.

The parties disagree whether the remaining $25,000 was ever tendered to Bessie. In her verified answer to the petition, Bessie, now 87 years old, denied that she was ever paid the balance of the amount owed pursuant to the 1983 Agreement. Petitioner has no specific recollection of paying Bessie the $25,000, and simply contends: "Based upon information and belief, Petitioner's brother, John Natsis, tendered the remaining balance due of $25,000 to Bess [sic] in 1983."

On July 25, 2008, after the death of his wife, John conveyed, by warranty deed, his and his wife's entire interest in the Ann Arbor property to the John G. Natsis Living Trust. Similarly, on December 18, 2009, petitioner and his wife conveyed their combined interest in the Ann Arbor property to the Christ G. Natsis and Mary M. Natsis Revocable Trust.

In the years after Martha's death, petitioner and John maintained, improved, and operated the Ann Arbor property as an apartment complex. Petitioner contends that they operated under the belief that, either pursuant to the 1983 Agreement or the missing deed, the two brothers or their trusts each owned a 1/2 interest in the property. Then, after John's death in 2011, petitioner decided to sell the property. In March 2016, petitioner, as trustee of the Christ G. Natsis and Mary M. Natsis Revocable Trust, and the trustees of the John G. Natsis Living Trust each contracted to sell their respective interests in the Ann Arbor property to Washington Street Apartments, LLC. During the title search, petitioner learned that Martha's estate still possessed a 1/3 interest in the Ann Arbor property. Nonetheless, on May 31, 2016, the Ann Arbor property was conveyed by warranty deed to Washington Street Apartments for the sum of $1,050,000.00. Currently, $200,000.00 has been placed in escrow until the cloud on the title is cleared.

## II. PROCEDURAL BACKGROUND

Petitioner thereafter filed a petition to reopen Martha's Estate. Petitioner requested that the court (1) reopen the estate, (2) appoint him personal representative, (3) hold the 1983 Agreement valid, and (4) enforce the agreement by finding that Bessie did not have any interest in the Ann Arbor property. In response to the petition, Bessie asserted that the 1983 Agreement was unenforceable, that Martha's estate possessed a 1/3 interest in the proceeds of the sale of the Ann Arbor property, and, as a result, Bessie was entitled to her 1/3 share of the estate's 1/3 interest in the sale proceeds.

The probate court granted the petition to reopen Martha's estate, appointed petitioner personal representative, and directed petitioner to file a dispositive motion on the issues raised in the petition. Petitioner subsequently filed a petition requesting summary disposition pursuant to MCR 2.116(C)(7) and (10). Petitioner argued that because Bessie, pursuant to the 1983 Agreement, agreed to receive $65,000 in exchange for a release of her interest in the estate and the Ann Arbor property, petitioner was entitled to an order of the court directing the estate's 1/3 interest in the proceeds of the sale of the Ann Arbor property be divided equally between the John G. Natsis Living Trust and the Christ G. Natsis and Mary M. Natsis Revocable Trust. Petitioner further asserted, among other things, that the statute of limitations and the doctrine of laches precluded Bessie from arguing that the 1983 Agreement was unenforceable.

In her response to the petition for summary disposition, Bessie noted that there had never been any payment of the outstanding $25,000 and no signed receipt that she ever received the entire $65,000. Thus, she never received her full consideration for the 1983 Agreement. Additionally, she argued that there was no evidence of any "phantom" quitclaim deed. Consequently, she continued to possess "a 1/3 residuary interest in Martha's Estate, including the 1/3 [sic[2]] sale value and proceeds from the 2016 closing of the [Ann Arbor] Property." Bessie also argued that petitioner was barred by the statute of frauds, the statute of limitations, and laches, from attempting to enforce the 1983 Agreement.

After a hearing on the petition for summary disposition, the probate court issued an opinion and order denying petitioner's petition for summary disposition and granting summary disposition in Bessie's favor pursuant to MCR 2.116(I)(2). The court recognized that the critical issue was the enforceability of the 1983 Agreement. It first determined that the 1983 Agreement satisfied the statute of frauds. The court also found that all of the essential elements of a contract were present despite the absence of a specific date, other than "1983," on the agreement. The court then found that performance was not completed as agreed upon by the parties. No deed was recorded conveying the decedent's interest in the property to John and petitioner, and there was no evidence presented to show that the remaining $25,000 was paid to Bessie.

Finding that the 1983 Agreement had been breached, the court then considered whether the ability to enforce the agreement was barred by the six-year limitations period that governs actions for breach of contract. MCL 600.5807(8). The probate court held:

> Because petitioner is the one who seeks to enforce the terms of the contract, he must comply with the requirements of the statute of limitations. In the supplement to the petition to reopen, the motion for summary disposition, and in the reply, petitioner specifically requests that the court declare the agreement to be valid and enforceable and find that it releases respondent's interest in the estate and the Washtenaw property. Ultimately, petitioner seeks to enforce the terms of the agreement by way of specific performance. The respondent simply raised nonpayment or breach as a defense. She did not initiate the proceeding. The petitioner did not seek to enforce the agreement through his petition to reopen

---

[2] See footnote 3, *infra*.

-4-

until 2016, well beyond when the statute of limitations had run. Thus, the petitioner's claim to enforce the agreement as alleged in the petition to reopen is barred by the statute of limitations and summary disposition is appropriate.

The court then considered the implications of the unenforceability of the 1983 Agreement:

> In the exercise of the court's authority, it finds that the estate owns a 1/3 interest in the Washtenaw property. In her will, the decedent devised the residue and remainder of her estate equally to the petitioner, the respondent, and John, giving them each a 1/9 interest[3] in the property. The parties entered into an agreement whereby the respondent would convey her 1/9 interest in the residue of the estate and in the property to the petitioner and respondent [sic[4]]. However, the parties did not fully perform in accordance with the agreement. As a result, respondent retained her interest in the decedent's estate and in the real property. Because the parties agree as to the sale, the petitioner, as personal representative of the estate, is hereby authorized to convey the estate's 1/3 share in the property to the purchaser. The proceeds of the sale shall be held in a restricted estate account and not be distributed without a prior order from the court. Counsel for the Personal Representative needs to insure funds are placed in a restricted account and submit verification to the Court.

> Thereafter, the parties may proceed as to the issue of settlement of the estate and distribution of the proceeds. Respondent's share will be reduced by the $40,000 she has received for the property. Briefs of ten pages or less may be submitted within 30 days from the date of this opinion and attached order on the issue of how the residue of the estate should be distributed and how much each party is to receive, including any possible setoffs. A hearing will be scheduled on the issue, at which time the parties will have the opportunity to submit proofs. In the alternative, the parties upon agreement may contact the court to schedule a status conference to see if the matter can be resolved without further litigation and costs. If no briefs or responses are received, the respondent's share will be reduced by $40,000.00 and $20,000.00 will be added to each of the other heir's shares.

Petitioner now appeals the probate court's order denying his petition for summary disposition and granting summary disposition in Bessie's favor.

---

[3] This 1/9 interest in the Ann Arbor property comes from dividing up only Martha's estate's interest. Petitioner and John, through their trusts, each already owned 1/3 of the Ann Arbor property by conveyance, and Martha owned the remaining 1/3. Pursuant to Martha's will, *Martha's interest in* the Ann Arbor property was divided equally between the three children. Consequently, Bessie was entitled to 1/3 *of Martha's 1/3* of the Ann Arbor property, which equals 1/9 of the property as a whole.

[4] The trial court clearly intended to refer to petitioner and John.

## III. STANDARD OF REVIEW

This Court reviews de novo a probate court's decision on a motion for summary disposition. *In re Estate of Attia*, 317 Mich App 705, 709; 895 NW2d 564 (2016). Petitioner moved for summary disposition pursuant to MCR 2.116(C)(7) and (10). A defendant is entitled to summary disposition "under MCR 2.116(C)(7) when a statute of limitations bars a claim." *In re Gerald L Pollack Trust*, 309 Mich App 125, 134; 867 NW2d 884 (2015). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim and must be supported by affidavits, depositions, admissions, or other documentary evidence, the substance or content of which would be admissible at trial." *In re Lett Estate*, 314 Mich App 587, 595; 887 NW2d 807 (2016). "The court must view the proffered evidence in the light most favorable to the party opposing the motion" and "should grant the motion when the submitted evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id*. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.* (quotation omitted). "Where undisputed evidence shows one party is entitled to judgment as a matter of law, the court may enter judgment for that party." *Id*. (citation omitted).

## IV. PETITIONER'S RIGHT TO ENFORCE THE 1983 AGREEMENT

Because Martha's will made no specific provisions for the Ann Arbor property, it became part of the estate residue that was to pass equally to Martha's three children. Under the terms of the 1983 Agreement, petitioner and John were obligated to pay Bessie the sum of $65,000 in exchange for her release of any interest she may have had in Martha's estate, including the Ann Arbor property. While there is evidence that $40,000 was paid to Bessie, there was no competent evidence that petitioner or John paid the remaining $25,000. In her verified answer to the petition, Bessie denied that she ever received the remaining balance. In response, petitioner provided no evidence, by way of documentation, affidavit, or otherwise, that the remaining amount was paid. Indeed, petitioner orally represented to the court that he simply assumed that John had paid the outstanding balance to Bessie. Furthermore, the 1983 Agreement specifically required that Bessie, upon payment of the consideration, would "sign a receipt for residue." No such receipt has been produced. The probate court did not err when it concluded that there existed no question of fact whether petitioner and John had paid to Bessie the total amount due under the agreement.

Petitioner and John's failure to pay the amount due pursuant to the agreement constituted a substantial breach going to the essence of the contract, which thereby relieved Bessie of any further obligation under the contract. See, e.g., *Blazer Foods, Inc v Restaurant Props, Inc,* 259 Mich App 241, 251 n 7; 673NW2d 805 (2003). Our Supreme Court has recognized that there exists "a failure of consideration when one party has committed a first, substantial breach of a contract and sought to maintain an action against the other party for a subsequent failure to perform." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 509; 885 NW2d 861 (2016). "'[W]hen there is a failure to perform a substantial part of the contract or one of its essential items,' the courts have permitted the parties to rescind the contract." *Id.* at 510 (citation and quotation omitted.) It is axiomatic that "one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Alpha*

*Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 613, 792 NW2d 344 (2010) (quotation omitted).

Consequently, the probate court did not err when it found that the 1983 Agreement was unenforceable. In the absence of this agreement, the court did not err when it further held that the provisions of Martha's will must prevail. In other words, that the estate possessed a 1/3 interest in the Ann Arbor property and that this interest would pass equally to Martha's three children.[5]

## V. RESPONDENT'S RIGHT TO CHALLENGE THE 1983 AGREEMENT

Petitioner nevertheless argues that Bessie is barred by the statute of limitations and the doctrine of laches from asserting "a claim" that the agreement was unenforceable. Petitioner reasons that when the $25,000 balance was not timely paid, Bessie had six years to bring a claim for breach of contract. He then reasons that because Bessie did not timely pursue this course, she is now precluded from challenging the enforceability of the 1983 Agreement. Essentially, petitioner argues that the statute of limitations should operate to bar Bessie from asserting any affirmative defense she may have regarding the enforceability of the 1983 Agreement. Petitioner cites to no legal authority to support the proposition that affirmative defenses are subject to statutes of limitations. Furthermore, it is plainly apparent that statutes of limitations apply to legal actions, not affirmative defenses. At the time the petition was filed, MCL 600.5807 provided that "[n]o person may bring or maintain *any action to recover damages or sums due for breach of contract, or to enforce the specific performance of any contract* unless, after the claim first accrued to himself or to someone through whom he claims, he commences the action within the periods of time prescribed by this section."[6] (Emphasis added.) Clearly, statutes of limitations apply to time-bar claims, not defenses to claims.

We reach a similar conclusion when considering application of the doctrine of laches. In *Knight v Northpointe Bank*, 300 Mich App 109, 114-115; 832 NW2d 439, 442-443 (2013), this Court explained the underpinnings of the doctrine:

> If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches. When laches appears, the court merely leaves

---

[5] The probate court did recognize that Bessie's share would be reduced by the $40,000 she previously received.

[6] MCL 600.5807 was amended by 2018 PA 15, effective May 7, 2018. The current version of the statute is substantially similar to the prior version and states, in pertinent part:

> A person may not bring or maintain an action to recover damages or money due for breach of contract or to enforce the specific performance of a contract unless, after the claim first accrued to the person or to someone through whom the person claims, the person commences the action within the applicable period prescribed by this section.

the parties where it finds them. This is so because equity will not lend aid to those who are not diligent in protecting their own rights. The rule that equity aids the vigilant is designed to discourage laches by making it a bar to relief and to prevent the enforcement of stale demands.

Although considerations of timing are important when determining whether laches applies to the facts, laches is not triggered by the passage of time alone. Laches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. As such, when considering whether a plaintiff is chargeable with laches, we must afford attention to prejudice occasioned by the delay. It is the prejudice occasioned by the delay that justifies the application of laches. This Court has repeatedly held that mere delay in attempting to enforce a right does not constitute laches, but that it must further appear that the delay resulted in prejudice to the party claiming laches of such character as to render it inequitable to enforce the right. [*Knight*, 300 Mich App at 114-115 (quotations, quotation marks, brackets, and citations omitted).]

Clearly, as the probate court correctly found, the laches doctrine applies to the entity asserting a legal claim, not a defense to a claim.

In this case, it is petitioner, not Bessie, who seeks to enforce the terms of the 1983 Agreement. Petitioner specifically requested that the court declare the agreement valid and enforceable, and thereafter find, pursuant to that agreement, that Bessie has waived any interest in the estate and, more specifically, the Ann Arbor property. In other words, as the probate court found, petitioner filed a claim for specific performance. In contrast, Bessie has not initiated any proceeding to enforce the agreement. She simply raised nonpayment as a defense. More significantly, petitioner did not initiate any action to enforce the agreement until more than 30 years after Bessie allegedly failed to perform several of her obligations under the contract. Accordingly, it is petitioner's claim for enforcement of the 1983 Agreement that is barred by the statute of limitations and doctrine of laches.

## VI. THE ESTATE'S RESIDUAL INTEREST IN THE ANN ARBOR PROPERTY

Petitioner alternatively argues that, irrespective of the enforceability of the 1983 Agreement, the probate court erred when it found that Martha's estate had any present interest in the Ann Arbor property. We disagree.

In support of this alternative position, petitioner asserts that Martha executed a quitclaim deed before her death conveying the property to John and petitioner. However, such a deed has never been produced and petitioner has provided no persuasive or credible evidence that such a deed was ever executed or existed. Petitioner relies on Paragraph 3 of the 1983 Agreement that references a "quit claim deed which was found in [Bessie's] papers wherein the real estate was conveyed to JOHN G. NATSIS and CHRIST G. NATSIS." This paragraph fails to identify any particular deed with certainty, especially in light of known deeds executed in 1956 and 1960 that also that also conveyed an interest in the property to John and petitioner. Moreover, in her verified response to the petition, Bessie alleged that the only deed she found after Martha's death

in 1976 was the deed transferring title of the property to Martha and her husband George. Bessie denied finding a quitclaim deed conveying Martha's interest in the property to petitioner and John. Petitioner has failed to establish the factual predicate for this alternative argument.

In any event, petitioner abandoned this position when his attorney conceded at a hearing below that he "was not asking the Court to approve any missing deed here" and the missing deed was only referenced to explain why the brothers thought that after Martha's death they each had a 1/2 interest in the property. Petitioner has not presented any evidence that Martha conveyed the property to John and petitioner before her death. Consequently, the probate court did not err when it found that the estate continued to possess a 1/3 interest in the Ann Arbor property.

## VII. CONCLUSION

The probate court properly found that the 1983 Agreement was unenforceable and that Bessie was permitted to assert defenses to the agreement. The probate court also properly found that Martha's estate retained a 1/3 interest in the Ann Arbor property, and Bessie was entitled to her share of that interest. Therefore, the probate court is affirmed. Appellee, Bessie Natsis Davenport, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel