*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLAXTON STREET APARTMENTS, LLC,

Plaintiff-Appellant,

v

WESTERN WORLD INSURANCE COMPANY
and CITY OF DETROIT,

Defendants-Appellees.

UNPUBLISHED
February 18, 2021

No. 350507
Wayne Circuit Court
LC No. 13-007897-CK

Before: SWARTZLE, P.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

Plaintiff, Claxton Street Apartments, LLC, appeals as of right the order disbursing $81,727.19 in escrowed insurance proceeds to defendant, the City of Detroit, pursuant to a settlement agreement between plaintiff, the City, and defendant, Western World Insurance Company. We affirm.

## I. BACKGROUND

In November 2012, plaintiff suffered a fire loss at its apartment building in Detroit. In June 2013, plaintiff filed this case against its insurer, Western World, requesting appointment of an umpire to resolve conflicting appraisals of the fire loss. The trial court appointed an umpire who, in January 2014, awarded plaintiff $376,908.76. Of that amount, Western World had already paid $96,168.85, leaving an outstanding balance of $280,739.91.

Before it paid the balance, Western World received a memorandum from the City stating that MCL 500.2227 required Western World to pay the City 25% of the umpire's award to ensure that plaintiff's building, which was in violation of the building code, was repaired or demolished. Plaintiff amended its complaint to add the City as a party. Plaintiff alleged that a second insurance claim was pending because of a March 2013 vandalism incident at the building. Therefore, plaintiff concluded, "[MCL 500.2227] [is] not triggered for the November loss but [is] likely applicable to the March loss and therefore Plaintiff is entitled to full payment of the appraisal award for the November loss."

On April 24, 2014, the trial court entered a settlement agreement in which the parties agreed that plaintiff's counsel would hold $81,727.19 in escrow until the March 2013 vandalism claim was resolved, at which time, plaintiff would use the disputed funds to demolish the building. In May 2014, the case was closed pursuant to the City's Chapter 9 bankruptcy petition.

In July 2015, Western Word filed a federal complaint against plaintiff, seeking a declaratory judgment that the March 2013 vandalism claim was not covered by the policy and that the policy was not in effect at the time. Plaintiff filed a counterclaim for breach of the insurance contract. The federal case eventually settled for a nominal amount.

In May 2018, the City demolished plaintiff's building for the cost of $86,860. In June 2019, plaintiff filed a motion to reinstate this case, arguing that the settlement agreement was invalid because, at the time of formation, the parties mistakenly believed that MCL 500.2227 applied to the facts of this case, when, for myriad reasons, it did not. The City requested enforcement of the settlement agreement—disbursal of the disputed funds to the City to reimburse it for the expense of demolishing plaintiff's building. The trial court entered an order disbursing the disputed funds to the City. Plaintiff now appeals.

## II. ANALYSIS

## A. SETTLEMENT AGREEMENT

Plaintiff argues that the settlement agreement is invalid because the parties mistakenly believed that MCL 500.2227 required Western World to pay 25% of plaintiff's fire loss claim to the City. Plaintiff's argument is unpersuasive because, by entering into that agreement, plaintiff knowingly assumed the risk of forfeiting a valid claim that MCL 500.2227 did not apply to the facts of this case.

Although plaintiff framed its motion to disburse the escrowed funds as a motion for summary disposition under MCR 2.116(C)(10), this Court "is not bound by what litigants choose to label their motions because this would exalt form over substance." *Lieberman v Orr*, 319 Mich App 68, 77 n 4; 900 NW2d 130 (2017) (cleaned up). Plaintiff's motion was substantively a motion to set aside a settlement agreement. This Court reviews a trial court's decision on a motion to set aside a settlement agreement for an abuse of discretion. *Vittiglio v Vittiglio*, 297 Mich App 391, 397; 824 NW2d 591 (2012). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Arabo v Michigan Gaming Control Bd*, 310 Mich App 370, 397-398; 872 NW2d 223 (2015).

Plaintiff argues that the parties made a mutual mistake regarding the applicability of MCL 500.2227 to the facts of this case. MCL 500.2227 provides, in relevant part:

> (1) If a claim is filed for a loss to insured real property due to fire, explosion, vandalism, malicious mischief, wind, hail, riot, or civil commotion and a final settlement is reached on the loss to the insured real property, an insurer shall withhold from payment 25% of the actual cash value of the insured real property at the time of the loss or 25% of the final settlement, whichever is less. . . .

-2-

After withholding, the insurer must give notice to the insured and the municipality in which the subject property is located that "the [municipality] may have the withheld amount paid into a trust or escrow account." MCL 500.2227(1)(d).

MCL 500.2227(5) provides that the withheld funds "shall be immediately forwarded to the insured" upon a showing of "reasonable proof" that the insured has repaired or demolished the subject building or has contracted to do so. MCL 500.2227(7) provides that, if the insured does not provide reasonable proof of repair or demolition within 120 days, the municipality "shall use the retained proceeds to secure, repair, or demolish the damaged or destroyed structure and clear the insured property so that the structure and property comply with local code requirements and applicable ordinances of the city, village, or township." Finally, MCL 500.2227(17) provides that withholding "applies only to final settlements that exceed 49% of the insurance on the insured real property."

This case began when plaintiff sued its insurer, Western World, requesting appointment of an umpire to resolve conflicting appraisals of a fire loss. The umpire determined the total value of the fire loss, as well as the amount Western World had already paid, leaving an outstanding balance of $280,739.91. Before Western World paid that balance to plaintiff, it received a demand from the City to withhold 25% under MCL 500.2227, on the ground that the City had inspected plaintiff's building and found it in violation of the building code. Plaintiff filed an amended complaint in which it asserted that the building had been vandalized in March 2013, and a second insurance claim had been filed. Plaintiff asserted that, given the 49% of coverage threshold of MCL 500.2227(17), withholding was not triggered for the 2012 loss but was likely applicable to the 2013 loss. Therefore, plaintiff claimed that it was entitled to full payment of the appraisal award for the 2012 loss.

On April 24, 2014, all parties signed and the trial court entered a settlement order that states, in relevant part:

> H. Claxton desires to demolish the property, but asserts that its insurance claim related to the March 2013 vandalism has not yet been resolved, and that the property cannot be demolished until that claim is resolved;
>
> I. Claxton's claim relating to the 2013 vandalism will seek funds designated for the demolition and removal of the property, and Claxton plans to use such funds, if awarded, for such purpose;
>
> J. The parties to this action have stipulated to the entry of this order, and the Court being otherwise fully advised in the premises:
>
> IT IS HEREBY ORDERED that:
>
> A. The disputed funds shall be released to Claxton within 21 days from the date of the entry of this order;

B.  The disputed funds shall be deposited into an escrow account maintained by Claxton (or its counsel or such other person or entity Claxton may designate) to be used for the demolition of the property;

C.  Unless Claxton has been ordered by the Court to demolish the property sooner, Claxton shall, within 30 days after its insurance claim relating to the March 2013 vandalism is resolved, have the property demolished by a contractor licensed to do so by the City of Detroit, and shall use the disputed funds, such other funds designated for such purpose in any payment made by Western relating to the 2013 vandalism and/or such other funds it may possess to pay for the costs of demolition;

D.  Once the property has been demolished, any portion of the disputed funds not necessary to pay for the costs of demolition may be utilized by Claxton for any purposes it may desire;

E.  The parties to this case need not comply with the deadlines and other requirements set forth in the Court's status conference scheduling order, and

F.  This Court shall retain jurisdiction of this case in order to ensure compliance with the terms of this order,

IT IS FURTHER ORDERED that entry of this order shall not preclude the City of Detroit from requesting from the court that the property be demolished prior to the resolution of Plaintiff's insurance claim relating to the March 2013 vandalism or from seeking other relief relating to the property if it deems that such action is necessary to protect the public health and safety.

"As a general rule, settlement agreements are final and cannot be modified." *Clark v Al-Amin*, 309 Mich App 387, 395; 872 NW2d 730 (2015) (cleaned up). "This is because settlements are favored by the law, and therefore will not be set aside except for fraud, mutual mistake, or duress." *Id*. "A mutual mistake is an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Id*. (cleaned up). "A mutual mistake is not a mere error or misunderstanding—it is an extreme mistake that must be so material that it goes to the foundation of the agreement." *Id*. And, "a mutual mistake must be *mutual*—it is not enough for one party to claim mistake, when the other party was aware of the alleged mistake at issue." *Id*. at 395-396.

Rescission is not available to relieve a party who has assumed the risk of loss in connection with a mistake. *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 30; 331 NW2d 203 (1982), citing Restatement Contracts, 2d, §§ 152, 154, pp 385-386, 402-406. A party may not avoid a contract on the ground of mistake if he "is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake related but treats his limited knowledge as sufficient," i.e., if he assumes the risk of a mistake. Restatement Contracts, 2d, § 154(b), pp 402-403. Relief "will generally not be granted for a mistake of law." *Olsen v Porter*, 213 Mich App 25, 29; 539 NW2d 523 (1995).

In this case, there is no reason to believe that the parties were mistaken about any fact or law material to the settlement agreement. Plaintiff's amended complaint, read with the factual representations in the settlement agreement, evince plaintiff's concern that, even if MCL 500.2227 did not apply to the 2012 fire-loss claim, the statute would be triggered when the March 2013 vandalism claim was settled, and the City would demand 25% of a larger amount to ensure that the building was repaired or demolished. The representations in the settlement agreement also evince plaintiff's concern that the City would demolish the building before the March 2013 vandalism claim was thoroughly investigated. Instead of litigating the applicability of MCL 500.2227, plaintiff agreed that it would hold the disputed funds in escrow, use them to demolish the building when the March 2013 vandalism claim was resolved (or earlier if so ordered by the trial court), and keep any funds remaining after demolition.

Five years later, plaintiff filed a motion to set aside the settlement agreement, raising a wide array of arguments about why MCL 500.2227 should not be applied to the facts of this case. This Court need not address these arguments because, whatever their merits, they have no effect on the validity of the settlement agreement. Every argument regarding the applicability of MCL 500.2227 that plaintiff raised five years after the settlement agreement could have been pursued instead of entering the settlement agreement. This Court has instructed that "it is incumbent upon the plaintiff's attorney to ensure that he and his client consider all possible claims, so that the client makes an informed settlement." *Clark*, 309 Mich App at 400. It is of no consequence that plaintiff entered the settlement agreement believing that the March 2013 vandalism claim would be settled for a relatively large amount rather than the nominal amount for which it eventually settled. A party "cannot void a settlement agreement merely because he has had a change of heart, nor can he do so merely because his assessment of the consequences of the settlement was incorrect." *Id*. at 396 (cleaned up). When plaintiff entered the settlement agreement, it knowingly assumed the risk that it was forfeiting a valid claim regarding the application of MCL 500.2227 to the facts of this case. Therefore, the trial court did not abuse its discretion in denying plaintiff's motion to set aside the settlement agreement.

## B. LACHES

Plaintiff argues that the doctrine of laches prevents the City's recovery under the settlement agreement because the City's bankruptcy caused delay and confusion in this case, records that plaintiff could have used to prove that it conducted repairs were destroyed in a vandalism incident, and the building's ownership changed and it was demolished. Plaintiff's arguments are without merit.

"This Court reviews de novo a trial court's decision to apply equitable doctrines such as laches." *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013). "Laches is an affirmative defense based primarily on circumstances that render it inequitable to grant relief to a dilatory plaintiff." *Attorney Gen v PowerPick Player's Club of Mich, LLC*, 287 Mich App 13, 51; 783 NW2d 515 (2010). "The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right." *Id*. (cleaned up). The party asserting the defense bears the burden of proving that it was prejudiced by the opposing party's delay and "that it would be inequitable to ignore the prejudice so created." *Id*. (cleaned up).

In this case, 3 years and 10 months, at most, elapsed between plaintiff's breach of the settlement agreement and the City's motion to enforce the settlement agreement. The City argues that, because the six-year statute of limitations for a breach of contract action has not run, laches cannot be applied in this case absent a showing of exceptional prejudice. Where the doctrine of laches applies, "a claim may be barred even though the period of limitations has not run." *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 456; 761 NW2d 846 (2008). The only relationship between the doctrine of laches and the statute of limitations is that the equitable considerations entailed in the doctrine of laches "can shorten, but never lengthen, the analogous period of limitations." *Id*. at 456-457. Unlike the statute of limitations, "laches is triggered not by the passage of time alone" but by the "prejudice occasioned by the delay." *Knight v Northpointe Bank*, 300 Mich App 109, 114-115; 832 NW2d 439 (2013).

Plaintiff has failed to show prejudice in this case. Plaintiff argues that the March 2013 vandalism incident destroyed records that plaintiff could have used to show that it repaired the earlier fire damage, and therefore, that its insurance proceeds were not subject to withholding under MCL 500.2227. If that fact is true, then plaintiff already lacked the records at the time it entered the settlement agreement, and consequently, was no worse off because of the delay. Plaintiff does not explain how the alleged July 2013 sale of the building, the City's 2014 bankruptcy, or the May 2018 demolition of the building changed plaintiff's position vis a vis the settlement agreement in any way. Furthermore, the doctrine of laches is an equitable defense. It would be inequitable to allow plaintiff to delay its attempt to avoid the settlement agreement for years, but bar the City from responding by attempting to enforce the agreement. Plaintiff has failed to show that application of laches is appropriate in this case.

Affirmed. Defendants, having prevailed in full, may tax costs under MCR 7.219(F).

/s/ Brock A. Swartzle
/s/ Jane E. Markey
/s/ Jonathan Tukel