*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STEVEN HINDERER and KATHLEEN HINDERER,

UNPUBLISHED
January 29, 2019

Plaintiffs-Appellants,

v

No. 339759
Washtenaw Circuit Court
LC No. 15-001131-CK

MARCUS SNYDER, CHELSEA BUILDERS, INC., and JASON EASON,

Defendants-Appellees,

and

DONALD BARKER,

Defendant.

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this dispute arising from the construction of a substantial addition to a residential home, plaintiffs, Steven and Kathleen Hinderer, appeal the trial court's orders dismissing their claims against defendants Marcus Snyder, Chelsea Builders, Inc., and Jason Eason, for their work and involvement in the construction of the addition in 2009.[1] By March 2010, the Hinderers identified numerous problems with Chelsea Builders' work, and according to the Hinderers, Chelsea Builders refused to rectify the problems and did not complete the project. On November 6, 2015, the Hinderers filed their complaint against defendants. The trial court granted defendants' motion for summary disposition based on the applicable statute of

---

[1] The Hinderers also named Donald Barker as a defendant on their original complaint, but they never served him. The trial court later dismissed him from the case, and he is not a party to this appeal.

limitations and laches. For the reasons more fully explained below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. PERIOD OF LIMITATIONS

The Hinderers first argue that the trial court erred when it dismissed their claims for breach of contract (Count I); breach of warranty (Count II); violation of the builders' trust fund act (Count III); fraud (Count IV); negligent construction (Count VII); and violation of the Michigan Consumer Protection Act (MCPA), see MCL 445.901 *et seq.* (Count VIII); on the ground that those claims were each barred by the applicable statutes of limitations.

## A. STANDARD OF REVIEW AND LAW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). We also review de novo whether the trial court properly interpreted and applied the relevant statutes. *Pransky v Falcon Group, Inc*, 311 Mich App 164, 173; 874 NW2d 367 (2015).

A party is entitled to have the trial court dismiss a plaintiff's action when the claim is barred by the applicable statute of limitations. See MCR 2.116(C)(7). As this Court has explained, a party can establish that it is entitled to summary disposition under MCR 2.116(C)(7) in two distinct ways: it can show that immunity is apparent on the face of the pleadings or it can present evidence to establish that, notwithstanding the allegations in the plaintiff's complaint, there is no factual dispute that he or she is entitled to immunity as a matter of law. *Yono v Dep't of Transp (On Remand)*, 306 Mich App 671, 678-680; 858 NW2d 128 (2014), rev'd on other grounds, 499 Mich 636 (2016).

## B. CONTRACT AND WARRANTY CLAIMS

A person cannot "bring or maintain an action to recover damages or money due for breach of contract" unless the party brings the action within six years. MCL 600.5807(1), (9).[2] A breach of contract claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827. That is, a breach occurs when the breaching party fails to perform as required under the agreement. See *Cordova Chemical Co v Dep't of Natural Resources*, 212 Mich App 144, 153; 536 NW2d 860 (1995).

In this case, the Hinderers alleged that the parties entered into an oral agreement for the construction of an addition to the Hinderers' home using the "broad outline of the draft contract dated November 16, 2009," but with the understanding that additional terms applied. Although the Hinderers alleged that the parties entered into the agreement, they did not allege that Snyder

---

[2] The Legislature amended the statute effective May 7, 2018. The changes affected the numbering and wording of the relevant provisions but did not alter the substance. See 2018 PA 15.

participated in any capacity other than as the duly authorized representative of Chelsea Builders. Indeed, even the alleged draft agreement the Hinderers attached to the complaint showed that the agreement was between Chelsea Builders and the Hinderers.[3] The Hinderers then alleged that "[d]efendants" breached the agreement in the "numerous ways" stated under their factual allegations, which included—but was not limited to—"refusing to complete the project," "demanding payments in excess of the amount agreed," "refusing to correct code violations," "failing to perform the work under the contractual standards," and by "failing to work in a manner so as to prevent damage to the existing structure and addition." The Hinderers similarly alleged, in relevant part, that "[d]efendants" expressly warranted the quality of the materials and workmanship and warranted that the materials and workmanship would comply with building codes and standards. The Hinderers further alleged that "[d]efendants" breached the warranties by providing substandard materials and performing substandard work.

The Hinderers allege that these acts or omissions occurred after the parties orally agreed to begin the project and after construction commenced on November 9, 2009. Assuming these allegations to be true and construing them in favor of the Hinderers, which this Court must do, see *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999), the Hinderers alleged that the breach of the agreement and the warranties occurred on or after November 9, 2009. The Hinderers filed their original complaint on November 6, 2015, which means that—as alleged— their breach of contract and warranty claims were timely. See MCL 600.5807(9); MCL 600.5827. Therefore, to the extent that the trial court dismissed the Hinderers' breach of contract and warranty claims as untimely, it erred.

## C. BUILDERS' TRUST FUND ACT

As for their claim under the builders' trust fund act, see MCL 570.151 *et seq.*, the Hinderers alleged that Chelsea Builders and Snyder were contractors for purposes of the act and that the Hinderers paid them more than $43,000 to purchase materials in the spring of 2009. They wrote that they continued to make scheduled payments, which totaled over $98,000. They further alleged that Chelsea Builders and Snyder did not use the money to purchase the materials that were to be used in the project or to pay laborers, subcontractors, or materialmen, and that they also appropriated the money for their own use in violation of the builders' trust fund act. More specifically, the Hinderers alleged that Chelsea Builders and Snyder failed to pay two subcontractors and failed to return the funds to the Hinderers.

This Court has held that the six-year period of limitations stated under MCL 600.5813 applies to a claim under the builders' trust fund act. See *DiPonio Constr Co, Inc v Rosati Masonry Co, Inc*, 246 Mich App 43, 56; 631 NW2d 59 (2001). A claim under the builders' trust fund act accrues when the contractor receives money for either the labor or materials necessary to make an improvement, appropriates the money to his or her own use, and fails to pay subcontractors or materialmen that the contractor engaged to furnish labor or provide materials. *Id.* at 57-58; see also *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 585; 794 NW2d 76 (2010) (stating the elements of a claim under the builders' trust fund act).

---

[3] The Hinderers did not allege that Eason entered into any agreement with them.

On appeal, Chelsea Builders and Snyder argue that the Hinderers' claim under the act had to have accrued in the spring of 2009 because that was the period within which the Hinderers alleged that Chelsea Builders and Snyder received the funds to purchase materials for the project. The Hinderers, by contrast, argue that the claim accrued when Chelsea Builders and Snyder refused to refund the money or transfer the materials that it had purchased. Neither position is correct. Although the Hinderers suggested that Chelsea Builders and Snyder could be liable under the act for failing to purchase the materials that they agreed to purchase, or by failing to return the funds that were paid for that purpose, the act applies only when the contractor or subcontractor appropriates the money for his or her own use after having engaged a subcontractor or materialman to provide services or materials and leaves the subcontractor or materialman unpaid. See *BC Tile*, 288 Mich App at 585; see also MCL 570.152 (providing that it is unlawful for a contractor or subcontractor to appropriate funds paid to him or her for any purpose other than to first pay laborers, subcontractors, or materialmen). As such, neither the failure to purchase the materials in advance of the project, nor the failure to return any funds that were not needed to pay laborers, subcontractors, or materialmen were a violation of the act. Because a contractor's failure to engage a subcontractor or purchase materials from a materialman does not violate the act, those failures cannot serve as the point at which such a claim accrues. See MCL 600.5827 (stating that a claim accrues when the wrong is complete). Therefore, to the extent that the Hinderers rely on those allegations to establish their claim under the builders' trust find act, they failed to state a claim upon which relief could be granted. See MCR 2.116(C)(8).

Nevertheless, the Hinderers did allege that Chelsea Builders and Snyder accepted the money, appropriated it to their own use, and left two subcontractors unpaid. If Chelsea Builders or Snyder engaged the services of a subcontractor and used the money for a purpose other than to pay the contractors first, it violated the act. See *BC Tile*, 288 Mich App at 585; MCL 570.152. Because the Hinderers alleged that the two subcontractors provided services during the construction project, which they alleged to have begun on or after November 9, 2009, the Hinderers alleged a timely claim under the builders' trust fund act with regard to the failure to pay those two subcontractors. As such, the trial court erred to the extent that it determined that the Hinderers claim under the builders' trust fund act was untimely under the applicable six-year period of limitation. MCL 600.5813.

## D. FRAUD

The Hinderers' fraud claims were also subject to a six-year period of limitations. See MCL 600.5813; *Boyle v Gen Motors Corp*, 468 Mich 226, 228 n 2; 661 NW2d 557 (2003). A claim of fraud accrues when the wrong was done—not when it was discovered, *Boyle*, 468 Mich at 231-232, and the wrong is done when the plaintiff is harmed, *id.* at 231 n 5.

The Hinderers did not state with particularity whether and when they suffered any harm from the alleged misrepresentations. See MCR 2.112(B)(1) (providing that the party alleging fraud must state the circumstances constituting the fraud with particularity); *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008) (stating that every element of the fraud claim must be pleaded with particularity); see also *Frank v Linkner*, 500 Mich 133, 150; 894 NW2d 574 (2017) (stating that, to determine when a claim accrued under MCL 600.5827, courts must look to the harm alleged in the plaintiff's cause of action). The Hinderers did allege that

some misrepresentations occurred before construction began and that others occurred after construction began. Construing the allegations in the light most favorable to the Hinderers, see *Maiden*, 461 Mich at 119, any harm from the misrepresentations alleged to have occurred after construction began would have had to have occurred on or after November 9, 2009. Thus, the Hinderers' claims of fraud—while lacking in particularity with regard to the nature and timing of the harm actually suffered—nevertheless were timely to the extent that they involved misrepresentations that occurred during the construction project. See MCL 600.5813; *Boyle*, 468 Mich 231-232. Moreover, as for the misrepresentations that the Hinderers alleged to have occurred before the construction began, they may have been able to amend their pleadings to more clearly state when the harm occurred, and leave to amend should be freely given to correct such deficiencies. See MCR 2.118(A)(2). Consequently, on this record, the trial court erred to the extent that it dismissed as untimely the Hinderers' claims of fraud that occurred during the construction project.

## E. NEGLIGENT CONSTRUCTION OF AN IMPROVEMENT

Our Legislature provided that no "person" can "maintain an action to recover damages for injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective or unsafe condition of an improvement to real property . . . against any contractor making the improvement, unless the action is commenced within" "[s]ix years after the time of occupancy of the completed improvement, use, or acceptance of the improvement." MCL 600.5839(1)(a). This period of limitations applies to tort actions; it does not apply to contract actions. See *Miller-Davis Co v Ahrens Constr, Inc*, 489 Mich 355, 370; 802 NW2d 33 (2011). In order for a claim to sound in tort when acting pursuant to a contract, the tortfeasor must have breached a duty that was separate and distinct from the duties imposed under the contract. See *Bailey v Schaaf (On Remand)*, 304 Mich App 324, 332-340; 852 NW2d 180 (2014) (examining the distinction between contractual liability and tort liability), vacated on other grounds 497 Mich 927 (2014). Indeed, our Supreme Court explained that it was error for this Court to expand the application of MCL 600.5839(1) to all actions brought against a contractor involving an improvement, including those brought for damage to the improvement itself. *Miller-Davis Co*, 489 Mich at 367.

Under Count VII, which was titled "Negligence in Construction," the Hinderers alleged numerous breaches that they claimed caused various harms. The Hinderers alleged that Chelsea Builders and Snyder harmed their property through negligent construction practices. Specifically, they alleged that Chelsea Builders and Snyder failed to properly protect the property from the elements during construction, which harmed both the original structure and the improvements made. They similarly claimed that Chelsea Builders and Snyder used "excessive, damaging force," which damaged the property, and used "unsafe methods" in demolishing the sunporch to make room for the new addition. These claims, and similar ones stated under Count VII, to the extent that they state a claim at all, do not appear to involve harms "arising out of the defective or unsafe condition of an improvement." MCL 600.5839(1). Rather, as Chelsea Builders and Snyder argue on appeal, these claims appear to involve ordinary negligence, which would be subject to the three-year period of limitations stated under MCL 600.5805, as amended by 2011 PA 162, in addition to the statute of repose stated under MCL 600.5839(1).

Notwithstanding the apparent application of former MCL 600.5805(10), currently MCL 600.5805(2), to the defective or unsafe condition of an improvement, this Court has held that MCL 600.5839 established a six-year period of limitations and period of repose for all claims involving negligent workmanship during the construction of an improvement. See *Citizens Ins Co v Scholz*, 268 Mich App 659, 665-671; 709 NW2d 164 (2005) (discussing what constitutes a defective or dangerous improvement subject to the six-year statute of repose and what constitutes ordinary negligence). The Court in *Citizens* relied heavily on MCL 600.5805, as amended by 2002 PA 715, and our Supreme Court's interpretation of that provision in *Ostroth v Warren Regency, GP, LLC* (*Ostroth I*), 263 Mich App 1; 687 NW2d 309 (2004), aff'd 474 Mich 36 (2006), to conclude that the Legislature intended MCL 600.5839 to apply to all actions arising from the construction of an improvement in addition to actions arising from the defective nature of the improvement itself. See *Citizens*, 268 Mich App at 664-665. Our Supreme Court noted that, under MCL 600.5805(14), as amended by 2002 PA 715, the Legislature stated that all claims against contractors shall be "as provided" in MCL 600.5839. *Ostroth v Warren Regency, GP, LLC* (*Ostroth II*), 474 Mich 36, 41; 709 NW2d 589 (2006), quoting former MCL 600.5804(14) (quotation marks omitted). Relying on that language, our Supreme Court concluded that the Legislature intended MCL 600.5839 to serve as both a statute of limitations and a statute of repose. *Id.* at 44-45.

Since the decisions in *Ostroth II* and *Citizens Ins*, the Legislature amended MCL 600.5805 to no longer state that the claims against contractors shall be "as provided" by MCL 600.5839. Instead, MCL 600.5805, as amended by 2011 PA 162, stated under MCL 600.5805(15), currently MCL 600.5805(14), that the "periods of limitation under this section are subject to any applicable period of repose established in section [MCL 600.]5838a, [MCL 600.]5838b, or [MCL 600.]5839." With this amendment, the Legislature modified the statutory scheme to preclude MCL 600.5839 from being applied as a statute of limitations, clarifying that it was a statute of repose that should be applied in addition to any applicable period of limitations. Cf. *Ostroth II*, 474 Mich at 44-45 (stating that there was no evidence that the Legislature intended MCL 600.5839 to be only a statute of repose and instead concluding that the Legislature intended that provision to be both a statute of limitations and repose). Because the periods of limitations are now subject to the period of repose stated under MCL 600.5839, see former MCL 600.5805(15), courts must apply both the applicable period of limitations and the applicable period of repose. As such, the Hinderers could not bring a claim involving negligent construction of an improvement against a contractor unless they brought the claim within three years after the claim first accrued, see former MCL 600.5805(1) and (10), and within six years "after the time of occupancy of the completed improvement, use, or acceptance of the improvement," MCL 600.5839(1)(a). Because any tort claim involving negligence during the construction of the improvement necessarily accrued before Chelsea Builders and Snyder stopped working on the property in April 2010, and the Hinderers did not bring the claims until November 2015, the claims stated under Count VII were untimely. See former MCL 600.5805(10).

The trial court did not err to the extent that it dismissed the Hinderers' claims under Count VII as untimely under MCR 2.116(C)(7).

## F.  MICHIGAN CONSUMER PROTECTION ACT

The Hinderers also argue on appeal that their claims under the MCPA were timely under the applicable statute of limitation.  The trial court, however, did not dismiss these claims as untimely under the applicable period of limitations.  Instead, it determined that Chelsea Builders and Snyder were exempt from the requirements of the MCPA and that the MCPA claims were barred by the doctrine of laches.  Consequently, we need not address whether these claims were barred by the applicable period of limitations.

## II.  LACHES

## A.  STANDARD OF REVIEW

The Hinderers next argue that the trial court erred when it dismissed their claims under the equitable doctrine of laches.  This Court reviews de novo a trial court's decision on a motion for summary disposition and reviews de novo whether the trial court properly applied an equitable doctrine to the facts of the case.  See *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013).  "A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence." *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010).  This Court reviews a trial court's findings of fact in support of the application of the doctrine of laches for clear error.  *Shelby Charter Twp v Papesh*, 267 Mich App 92, 108; 704 NW2d 92 (2005).

## B.  ANALYSIS

The doctrine of laches arose from the requirement that a complainant in equity must come to the court with a clean conscience, in good faith, and after acting with reasonable diligence.  *Knight*, 300 Mich App at 114.  "If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches." *Id*.  Although timing is important, laches is not triggered by the passage of time alone; rather, it is the prejudice occasioned by the delay that justifies application of the doctrine to bar a claim.  *Id*. at 114-115.  The defendant bears the burden of proving that the plaintiff's lack of diligence prejudiced the defendant sufficiently to warrant application of the doctrine of laches.  See *Yankee Springs Twp v Fox*, 264 Mich App 604, 612; 692 NW2d 728 (2004).

In their original motion for summary disposition, Chelsea Builders and Snyder argued that the doctrine of laches applied to bar all of the Hinderers' claims because the documentation the Hinderers submitted to the trial court and the other record evidence showed that, although they were aware of their claims six years earlier, they had inexplicably delayed bringing them. During that time, they proceeded to have contractors perform work and alterations to the home. In that way, the delay resulted in the loss of evidence, which prejudiced the defense.

In response, the Hinderers stated that photos, scans, and reports documenting the defects existed.  Further, they had submitted some photos and reports that they claim document the condition of the property before any changes were made and offered Kathleen Hinderer's affidavit in which she averred that there was further documentation establishing the defective condition of the improvements.  They also maintained that they advised Chelsea Builders and

Snyder of the defects so as to allow them the opportunity to correct them. Finally, they asserted that the delay was not unreasonable because they were pursuing their claims against Chelsea Builders and Snyder through a state agency.

In ruling on the original motion for summary disposition, the trial court characterized the Hinderers' delay as inexcusable and stated that it was reasonable to infer that significant evidence had been lost. The trial court, however, did not address the evidence that permitted an inference that the Hinderers' delay was reasonable in light of their efforts to secure compensation without proceeding to court, and it did not address the Hinderers' evidence that they sufficiently documented the construction work to allow Chelsea Builders and Snyder to present a reasonable defense, which implicated whether the delay prejudiced Chelsea Builders. The trial court also did not discuss whether Chelsea Builders and Snyder had the ability to obtain additional evidence in their defense by deposing the persons involved in the original and subsequent improvements.

In their second motion for summary disposition, Chelsea Builders and Snyder did not specifically raise the doctrine of laches. They argued that the trial court should dismiss the Hinderers' breach of contract, warranty, and fraud claims for the same reasons argued in their first motion for summary disposition, which included laches. The trial court granted the second motion for summary disposition and dismissed all of the Hinderers' claims except their MCPA claim. In granting the motion, the trial court mentioned laches, but it did not address the evidence in support of applying the doctrine of laches to bar the claims. It also did not discuss the possible factual dispute involving whether the doctrine could be properly applied.

Chelsea Builders and Snyder did address the issue of laches in their supplemental brief as it might apply to the Hinderers' claims under the MCPA. And the Hinderers reiterated their earlier arguments with regard to the doctrine of laches as it might apply to their MCPA claim. Specifically, they maintained that they had taken reasonable steps to assert their rights before resorting to the courts, which included filing a claim with Chelsea Builders' insurer and preserving the evidence before proceeding to complete the project. Chelsea Builders also discussed the prejudice prong of the doctrine of laches and presented evidence that the Hinderers' dramatically altered the property.

At the hearing to consider whether to dismiss the Hinderers' MCPA claims, the trial court discussed its decision to apply laches more specifically. It stated that it had not "seen and probably won't ever see another case as clear an example of laches." It agreed with defense counsel and stated that it believed that the Hinderers had "lulled" Chelsea Builders and Snyder into believing that they were just going to pursue their complaints with the state agency and the insurer. The trial court again did not carefully analyze the evidence implicating whether the Hinderers' delay in filing suit was reasonable and did not discuss the evidence tending to show that Chelsea Builders and Snyder were not prejudiced by the delay.

Chelsea Builders and Snyder had the burden to demonstrate that the Hinderers' claim should be barred under the doctrine of laches. *Yankee Springs Twp*, 264 Mich App at 612. And whether to apply the doctrine of laches may depend on the resolution of factual disputes about the reasonableness of the delay and the prejudice occasioned by the delay. See *Eberhard v Harper-Grace Hosps*, 179 Mich App 24, 39-40; 445 NW2d 469 (1989). In this case, there was

evidence that would permit a trial court sitting in equity to find that the Hinderers' delay was unreasonable and prejudiced Chelsea Builders and Snyder. But there was also evidence from which the trial court could have found that the Hinderers proceeded with due diligence or that the delay did not prevent Chelsea Builders or Snyder from defending the claims. Whether treated as a decision on a motion for summary disposition under MCR 2.116(C)(7) or (C)(10), there was a factual dispute on which reasonable minds may differ about whether the doctrine of laches should apply, and as such, this issue cannot be resolved on a motion for summary disposition. See *White v Taylor Distributing Co, Inc*, 275 Mich App 615, 630; 739 NW2d 132 (2007) (stating that trial courts may not resolve factual disputes or determine credibility in ruling on a motion for summary disposition).

For the same reason, we decline to consider the Hinderers' argument that the doctrine of unclean hands bars Chelsea Builders and Snyder from asserting laches as a defense. See *Attorney General v PowerPick Players' Club of Mich, LLC*, 287 Mich App 13, 52; 783 NW2d 515 (2010) (stating that one with unclean hands may not assert the equitable defense of laches). The record requires further factual development to determine whether that equitable doctrine might apply. See, e.g., *Mudge v Macomb Co*, 458 Mich 87, 109; 580 NW2d 845 (1998). Further, although this Court has held that the equitable doctrine of laches applies to actions at law, see *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 456; 761 NW2d 846 (2008), our Supreme Court has stated that the equitable doctrine of unclean hands "is only relevant in equitable actions," see *Rose v Nat'l Auction Group*, 466 Mich 453, 467-468; 646 NW2d 455 (2002). Hence, it is unclear whether the equitable doctrine of unclean hands can be used in an action at law to defeat the application of laches.

The trial court erred to the extent that it applied the doctrine of laches to bar the Hinderers' claims without first holding a trial or evidentiary hearing to resolve the factual disputes underlying the proper application of that doctrine.

## III. MCPA

### A. STANDARD OF REVIEW

The Hinderers next argue that the trial court erred when it determined that Chelsea Builders and Snyder were exempt from the requirements of the MCPA and dismissed their MCPA claims in part on that basis. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg*, 285 Mich App at 369. This Court also reviews de novo whether the trial court properly interpreted and applied the relevant statutes. *Pransky*, 311 Mich App at 173.

### B. ANALYSIS

The Legislature prohibited certain "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce" in the MCPA. MCL 445.903(1). However, it also provided that the MCPA does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." MCL 445.904(1). The party claiming the exemption has the burden of proving it. MCL 445.904(4).

Our Supreme Court first examined the scope of this exemption in *Attorney General v Diamond Mtg Co*, 414 Mich 603; 327 NW2d 805 (1982). In that case, the Court had to determine whether Diamond Mortgage was exempt from the MCPA for claims involving home loans because it was licensed as a real estate broker, and the licensing act at the time, MCL 451.201 *et seq.*, as repealed by 1980 PA 299, contemplated that real estate brokers would negotiate such loans. *Id*. at 606, 616. The *Diamond* Court held that Diamond Mortgage was not exempt because, "[w]hile the license generally authorizes Diamond to engage in the activities of a real estate broker," it did not specifically authorize the conduct at issue. *Id*. at 617. The Court acknowledged that no act specifically authorizes "misrepresentations or false promises," but it disagreed that its construction rendered the exemption meaningless. *Id*. It explained that the exemption would apply even when a party attached such labels to a transaction or conduct if the underlying transaction or conduct had been specifically authorized under the laws administered by a regulatory board. *Id*.

In *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999), our Supreme Court returned to the exemption stated under MCL 445.904(1) and again rejected the contention that the exemption only applies when the allegedly wrongful conduct was itself authorized by law. The Court explained that the "relevant inquiry is not whether the specific misconduct alleged by the plaintiff" is specifically authorized by law, but rather "whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Id*. at 465.

Our Supreme Court examined the meaning of the term "specifically authorized" as it applied to residential builders in *Liss v Lewiston-Richards, Inc*, 478 Mich 203; 732 NW2d 514 (2007). The Court reiterated that the focus must be on the "general transaction" and whether it has been "explicitly sanctioned" by law and not whether the specific misconduct had been prohibited. See *id*. at 212-213. The Court concluded that residential home building was conduct that was exempt from the MCPA because the occupational code, specifically MCL 339.2401 *et seq.*, authorized residential home building. *Liss*, 478 Mich at 214. The Court clarified that residential homebuilding was authorized under the occupational code because the code required the home builder to have a license and a license constituted formal permission to do something or carry on some business. *Id*. at 214 n 39. The Court also noted that there were only a limited number of instances where a "non-licensed builder" was permitted to act as a residential builder. *Id*. at 214. The Court concluded that, with limited exceptions, residential home building was a transaction specifically authorized under the occupational code:

> The clear import of the statutory scheme is that there are only a few instances where one can engage in the business of a residential home builder without having a license. Therefore, with limited exceptions, contracting to build a residential home is a transaction "specifically authorized" under the [Michigan Occupational Code], subject to the administration of the Residential Builders' and Maintenance and Alteration Contractors' Board. [*Id*. at 215.]

Notably, in both *Diamond Mtg* and *Liss*, our Supreme Court emphasized that the defendant was either exempt or not exempt from the MCPA on the basis of the conduct that was specifically authorized for someone holding the relevant license. In *Diamond Mtg*, the Court concluded that Diamond Mortgage was not exempt from the MCPA because its real estate

-10-

broker's license did not authorize it to make loans. *Diamond Mtg*, 414 Mich at 617; see also *Smith*, 460 Mich at 464 (recognizing that the transaction at issue in *Diamond Mtg* was not exempt from the MCPA because the conduct was not specifically authorized under the defendant's real estate broker's license). By contrast, in *Liss*, the builder had a residential builder's license, which specifically authorized it to engage in the business of residential building and so it was exempt from the MCPA when engaged in such conduct. *Liss*, 478 Mich at 214-215, 214 n 39.

In this case, the Hinderers alleged that Chelsea Builders and Snyder were engaged in the business of residential construction and alteration but did not have a residential builder's license. Accepting those allegations to be true, see *Maiden*, 461 Mich at 119, Chelsea Builders and Snyder were not specifically authorized by the occupational code to engage in residential building. As such, the exemption stated under MCL 445.904(1)(a) did not apply to the conduct at issue. *Liss*, 478 Mich at 214-215; *Diamond Mtg*, 414 Mich at 617. Consequently, the trial court erred when it determined that the exemption stated under MCL 445.904(1)(a) applied because the "transaction or conduct" was "specifically authorized under laws administered by a regulatory board . . . ." The occupational code does not authorize persons to conduct residential building without a license.

On appeal, Chelsea Builders and Snyder maintain that the case law must be read to examine whether the conduct or transaction at issue was authorized under some regulatory scheme without regard to whether the individual engaging in the conduct or transaction held the requisite license that would allow him or her to engage in the conduct or transaction. We disagree. In *Diamond Mtg*, our Supreme Court did not examine whether the issuing of loans secured by mortgages was an activity that was authorized under any regulatory scheme; rather, it examined whether the license held by the defendant in that case authorized the issuing of loans secured by mortgages and determined that it did not. Similarly, in *Liss*, our Supreme Court explained that it is the holding of a license that confers the authority to act under the regulatory scheme. Consequently, the relevant inquiry is not whether the conduct was authorized generally under some regulatory scheme, but whether the license actually held by the defendant authorized the general conduct or transaction at issue. It follows that a person who does not hold the license to engage in the relevant conduct cannot claim the exemption under MCL 445.904(1)(a). See *Liss*, 478 Mich at 214-215; *Diamond Mtg*, 414 Mich at 617.

The trial court erred when it determined that the exemption stated under MCL 445.904(1)(a) applied to the facts as alleged in this case. Therefore, it erred to the extent that it dismissed the Hinderers' claims on that basis, and we reverse this aspect of the trial court's decision.

## IV. PIERCING THE CORPORATE VEIL

The Hinderers also argue that the trial court erred by dismissing their claim for piercing the corporate veil as stated under Count V of their complaint.

Corporations and other artificial entities are legal fictions. *Green v Ziegelman*, 310 Mich App 436, 450; 873 NW2d 794 (2015). Courts indulge a presumption that the entity is separate and distinct from its owners absent some abuse of the corporate form. *Id*. at 451. A court sitting

in equity may, however, pierce the veil of corporate structure and impose liability on the owners to prevent fraud or injustice. *Id*. "[P]iercing the veil of a corporate entity is an equitable remedy sparingly invoked to cure certain injustices" and not a separate cause of action. *Gallagher v Persha*, 315 Mich App 647, 654; 891 NW2d 505 (2016). Whether to pierce the corporate veil depends on the specific facts of the each case, see *Rymal v Baergen*, 262 Mich App 274, 293-294; 686 NW2d 241 (2004), and the proponent seeking to disregard the separate existence of the entity bears the burden to prove facts that would justify doing so, see *Green*, 310 Mich App at 454 (discussing the elements that the complainant must establish to justify disregarding an entity's separate existence). The party asking the trial court to disregard the separate existence of an entity may do so in his or her original complaint or may do so in a subsequent complaint after a judgment has been entered against the entity. See *Gallagher*, 315 Mich App at 665-666. Thus, a plaintiff must specifically ask the trial court to disregard the separate existence of an entity and must allege facts that, if true, would justify doing so.

In a separate count (Count V) of their third amended complaint, the Hinderers alleged that Snyder could be personally liable for the wrongs committed by Chelsea Builders because he was Chelsea Builders' officer at the time. They also alleged that the trial court could impose personal liability on Snyder because Snyder used Chelsea Builders as a "mere instrumentality" to commit frauds and wrongs on the Hinderers, which caused them to suffer an "unjust loss." They further alleged that he failed to maintain Chelsea Builders' corporate form, mingled his personal funds with the corporation's funds, and made improper distributions that left Chelsea Builders without assets to pay creditors. If found to be true, these allegations might justify the trial court's exercise of equitable power to disregard the separate existence of Chelsea Builders and impose personal liability on Snyder for any judgment against Chelsea Builders. See *Green*, 310 Mich App at 454. Accordingly, because we have concluded that the trial court erred when it dismissed some of the Hinderers' claims against Chelsea Builders, we agree that their claim that the trial court should disregard Chelsea Builders' separate existence remains a viable remedy.

## V. CLAIMS AGAINST EASON

### A. STANDARD OF REVIEW

Finally, the Hinderers argue that the trial court erred when it dismissed their claims against Eason, as stated under Count VI of their complaint, for failure to state a claim. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg*, 285 Mich App at 369.

### B. ANALYSIS

A trial court should dismiss a claim under MCR 2.116(C)(8) when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. See *Maiden*, 461 Mich at 119.

Under Count VI of their complaint, the Hinderers alleged generally that Eason participated in the events at issue by signing a draft version of an agreement on Chelsea Builders' behalf and by applying for the building permit that Chelsea Builders used in the improvement project at issue. They then conclude from these general allegations that Eason

could be held personally liable for the "portion of the work not done and for the defects of the work actually done for which he pulled the permit as well as for all code violations and violations of law which occurred during the construction regarding the Plaintiff's project."

In Count VI, the Hinderers did not identify any viable common law or statutory cause of action against Eason. Although they alleged that Eason's signature appeared on a draft agreement, the Hinderers also alleged that they did not accept the draft agreement. As such, they failed to state a contract claim against Eason. See *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 508; 853 NW2d 481 (2014) (stating that an essential element of a breach of contract claim involves proving that the parties actually entered into a binding agreement).

Similarly, although the Hinderers alleged that Eason engaged in wrongful conduct by applying for the building permit, they did not identify any common law or statutory cause of action that could make Eason liable for any and all harms arising from the project associated with the building permit. On appeal, the Hinderers suggest that Eason might be liable under MCL 339.2405(1), which provides that a corporation or other entity may obtain a license through a qualifying officer and states that the "qualifying officer is responsible for exercising the supervision or control of the building or construction operations" by the entity. However, the Hinderers did not make any allegations against Eason involving MCL 339.2405(1), and on appeal they maintain that Eason was not in fact a qualifying officer. Consequently, as alleged under Count VI, the Hinderers failed to state any claim against Eason that was cognizable under Michigan law.

Although the trial court did not specifically discuss the grounds for dismissing the claim against Eason, it had the authority to dismiss the claim against Eason on its own initiative because it was evident from the pleadings that he was entitled to judgment as a matter of law under MCR 2.116(C)(8). See MCR 2.116(I)(1) (providing that a trial court must "render judgment without delay" when the "pleadings show that a party is entitled to judgment as a matter of law").

The trial court did not err when it dismissed Count VI of the Hinderers' third amended complaint.

VI. CONCLUSION

For the reasons stated, we reverse the trial court's decision to dismiss the Hinderers' breach of contract, warranty, and fraud claims as untimely. We also reverse the trial court's decision to dismiss the Hinderers' claim under the builders' trust fund act to the extent that they alleged that Chelsea Builders and Snyder appropriated the funds for their own use. We affirm the trial court's decision to dismiss the Hinderers' negligent construction claims as untimely.

We also reverse the trial court's decision to grant summary disposition on the ground that the Hinderers were guilty of laches; there is a question of fact as to whether laches apply, which could not be resolved on a motion for summary disposition. We also reverse the trial court's determination that Chelsea Builders and Snyder were exempt from application of the MCPA. The Hinderers' may continue to demand to pierce the corporate veil to the extent that the

-13-

Hinderers have viable remaining claims against Chelsea Builders. Finally, we affirm the trial court's decision to dismiss Count VI of the Hinderers' complaint for failure to state a claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Because none of the parties prevailed in full, we order that none may tax costs. See MCR 7.219(A).


/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause